RONEY, Plaintiff in error, v. STATE, Defendant in error.

*Nos. State 14, 15. Argued October 1, 1969.—Decided October 28, 1969.*

(Also reported in 171 N. W. 2d 400.)

524

526

For the plaintiff in error there was a brief by *Irving G. Curry III* and *McCarty, Swetz & Curry*, all of Kaukauna, and oral argument by *Irving G. Curry III*.

For the defendant in error the cause was argued by *Betty R. Brown*, assistant attorney general, with whom on the brief were *Robert W. Warren*, attorney general, and *William A. Platz*, assistant attorney general.

HEFFERNAN, J.

### Applicability of Miranda

The objection made by defense counsel was that the admission should have been excluded because the defendant was in custody and was subject to interrogation and that, as a consequence, the exclusionary rule of *Miranda* applied to all statements elicited prior to the *Miranda* warnings. We do not agree that *Miranda* controls this situation.

The trial judge specifically found that the admission was not in response to interrogation and that the defendant was free to leave. In view of the record, this appears

to be an unquestionably correct decision. There was no evidence to the contrary. While the defendant's counsel now asserts that the defendant did not feel free to leave and considered himself in custody, defendant failed to take the stand at the hearing outside the presence of the jury to state his version of the circumstances. This he could have done when the evidentiary matter was considered outside the presence of the jury without waiving his right against self-incrimination, and he would not have been required to testify to the same facts before the jury unless he so desired. *State ex rel. Goodchild v. Burke* (1965), 27 Wis. 2d 244, 265, 133 N. W. 2d 753.

The defendant relies heavily upon *State v. La Fernier* (1967), 37 Wis. 2d 365, 155 N. W. 2d 93. This case is not in point, inasmuch as the defendant there was clearly in custody and had been subjected to interrogation. The record therein indicated that he had been interviewed on the day before. He was asked whether he wanted to take the lie detector test. We held that that was a sufficient custodial interrogation to vitiate any subsequent statement in the absence of a *Miranda* warning.

*Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694, was the outgrowth of *Escobedo v. Illinois* (1964), 378 U. S. 478, 84 Sup. Ct. 1758, 12 L. Ed. 2d 977. The essence of *Escobedo* was that a confession made after a police procedure had changed from the investigatory to the accusatory was in violation of the basic constitutional rights against self-incrimination and a deprivation of the right of counsel unless certain constitutional safeguards were observed. *Escobedo*, page 492. *Miranda* explained in greater detail what the United States Supreme Court meant when in *Escobedo* it spoke of an investigation which had "focused" on the accused. It defined that stage of the investigation by referring to it as "custodial interrogation" and stated:

"By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been

taken into custody or otherwise deprived of his freedom of action in any significant way." (P. 444.)

Each of the four cases considered in *Miranda* involved a defendant who was questioned by law enforcement officers, "in a room in which he was cut off from the outside world." (P. 445.)

In *Miranda* the court placed much emphasis upon the "police-dominated atmosphere" and the "Mutt and Jeff" playacting of the successive series of interrogators. (P. 452.)

They referred to the "police-dominated atmosphere" as creating an "aura of confidence in his guilt [that] undermines his will to resist." (P. 455.)

In referring to the four cases considered in *Miranda,* the supreme court referred to the fact that: "In each of the cases, the defendant was thrust into an unfamiliar atmosphere and run through menacing police interrogation procedures." (P. 457.)

*Miranda* refers to: "An individual swept from familiar surroundings into police custody, surrounded by antagonistic forces, and subjected to the techniques of persuasion . . . ." (P. 461.)

In referring to related cases as well as those included in *Miranda,* the court said: "The entire thrust of police interrogation there, as in all the cases today, was to put the defendant in such an emotional state as to impair his capacity for rational judgment." (P. 465.)

*Miranda* is made applicable to "an individual *held* for interrogation." (Emphasis supplied.) (P. 471.)

As important as was the discussion of the situations in which *Miranda* was to be applicable was the court's statement about what situations it was to be inapplicable: "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding." (P. 477.)

The court also made it eminently clear that the mere fact that a person was in custody did not invoke the rule. The court stated:

"In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege *while an individual is in custody* is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (Emphasis supplied.) (P. 478.)

Applying these standards of *Miranda* to the actual situation of this case, it is apparent that they are not applicable. The defendant was not taken from familiar surroundings. He was not stopped. The place where he was found and where the admission was made was completely of his own choosing, and the evidence which he did not seek to controvert was that he was free to leave. The overwhelming atmosphere of a custodial or in-station interrogation was totally absent. Moreover, in the instant case the police procedure at the service station was certainly not accusatory. The police officers did not think, and they had no reason to think, that a crime had been committed or that the defendant was a culprit. They had no knowledge that the car was stolen. The only question put to him was to ask if he had identification. This is hardly the type of in-custody interrogation proscribed by *Miranda*. The facts clearly support the judge's finding that the defendant was not in custody. As is clearly stated in *Miranda*, however, custody alone does not invoke the *Miranda* rule. *Miranda* holds that a statement that is volunteered and not elicited as a result of prior interrogation is free from the strictures of

*Miranda* even if made while in custody. The statement of the defendant herein was completely spontaneous and was not in response to any interrogation that would lead the defendant to conclude that he was the subject of an accusatory procedure.

It was admitted by the police officers that, when they initially left their squad car, they unsnapped the holsters of their pistols, but there is no evidence whatsoever that the defendant saw these movements or was even aware of them.

If *Miranda* is applicable to the situation in the instant case, then the extensive discussion by the United States Supreme Court pointing out the admissibility of volunteered confessions, despite custody, is completely meaningless; and the proper statement of the rule would then be that all statements volunteered during the course of a police investigation are subject to exclusion on the *Miranda* rationale. Such is not our understanding of the law. The spontaneous and volunteered statement of the defendant without prior questioning of an accusatory nature and without substantial deprivation of his personal liberty was not in violation of *Miranda*.

### Admissibility of the statement under the Goodchild test

By the decision in *State ex rel. Goodchild v. Burke, supra,* this court adopted the "orthodox" test for determining the voluntariness of the confession. We stated therein:

"In essence the orthodox rule provides for a separate hearing before the trial judge alone on the issue of voluntariness with a determination by him that is final." (P. 262.)

The question of voluntariness is, of course, not directed to the trustworthiness of the statement and whether the statement is true and credible, but rather whether it was

obtained under such circumstances that it represents the uncoerced, free will of the declarant or whether the circumstances deprived him of the ability to make a rational choice. The objection made by defendant's counsel herein did not go to voluntariness at all. It rather went to the narrow question of whether there had been a denial of the defendant's rights by the failure to use the proper *Miranda* procedure. It was therefore a misnomer to refer to the hearing as a *Goodchild* proceeding. As *Miranda* points out, however, there can be compliance with the rules set forth therein, but the confession might still be subject to the objection of involuntariness. *Johnson v. New Jersey* (1966), 384 U. S. 719, 86 Sup. Ct. 1772, 16 L. Ed. 2d 882, distinguishes between a challenge to voluntariness and an objection based on the *Miranda* rule. A confession can be constitutionally antiseptic under *Miranda* in that it arises neither from interrogation nor custody, but can be involuntary because of coercive circumstances to which the police are not parties. Accordingly, the satisfaction of the *Miranda* rule does not ipso facto satisfy the question of voluntariness if one is raised, and the problems may exist side by side in the same case.

### Type of hearing to be used in determining Miranda objections

It is apparent, however, that in each case, whether the challenge is under *Goodchild* or under *Miranda,* substantially the same type of inquiry must be made by the court. In *Miranda* the question is, was the confession or other statement obtained under such circumstances of custodial interrogation as to require the exclusion of the statement from evidence. In *Goodchild* the question is, was the statement involuntary and therefore should be excluded from evidence. In each case, of course, the credibility or trustworthiness of the statement remains a question to be determined by the jury.

We therefore conclude that *Miranda,* like *Goodchild,* should require a hearing by the trial judge out of the presence of the jury.

The *Goodchild* procedure has been outlined in the case bearing that same name. A similar procedure should be followed in the event of a *Miranda* objection. The court should determine the merits of that objection sitting alone, out of the presence of the jury and preferably, as in *Goodchild,* in a pretrial proceeding. Following such a hearing in which the facts are heard, the court's finding would have to be made beyond a reasonable doubt and the state would have the burden of proving compliance with *Miranda* or a waiver of those requirements. The determination would be subject to the same standard of review by this court as are rulings on the admissibility of confessions challenged as involuntary.

We, accordingly, herein adopt the procedure of the *Goodchild* hearing in determining *Miranda* questions, as was suggested in the concurring opinion of Mr. Justice WILKIE in *Hayes v. State* (1968), 39 Wis. 2d 125, 136, 158 N. W. 2d 545. If both *Miranda* and *Goodchild* objections are made to the same statements, the matter could be disposed of in a single hearing although separate findings would be required.

### Does Goodchild make a pretrial hearing mandatory

In the instant case on appeal, the defendant prefers to denominate the hearing held herein as a *"Goodchild"* hearing and, on that basis, concludes that the hearing held by Judge SCHAEFER was improper inasmuch as *Goodchild* "requires" that the hearing be prior to trial. It was not the intention of this court, however, to make mandatory the determination of a *Goodchild* matter only in a pretrial hearing. True, the clear implication of *Goodchild* was that this court considered that such a hearing should preferably be held before trial so as not to inter-

rupt the orderly process of presenting a case to a jury. That preference was reiterated in *Bradley v. State* (1967), 36 Wis. 2d 345, 153 N. W. 2d 38, 155 N. W. 2d 564, but the latter case made it clear that the effectiveness of the *Goodchild* procedure was to be tested not by the time at which it was held during the trial proceedings, but by whether the hearing and the findings were in compliance with the standards set forth in *Goodchild.*

It would appear in the interest of good judicial administration to follow the suggested procedure of *Goodchild* in respect to both *Goodchild* and *Miranda* objections, but it is very clear that a court's failure to do so in no way vitiates the effect of otherwise proper hearing and findings.

### Does the Goodchild rule require a pretrial notice by the prosecution

The defendant herein also contends that the hearing was improperly held because no special notice was given by the prosecutor that the confession or admission would be offered in evidence at the trial, as suggested by *Goodchild.* We do not consider the suggestion with regard to notice the *sine qua non* for the introduction of a statement under either *Miranda* or *Goodchild.* If, however, a statement is sought to be introduced which is subject to either a *Goodchild* or *Miranda* objection, the defendant should have an opportunity to test the admissibility of such statement in the type of hearing we suggest. It is therefore apparent that a statement which is sought to be introduced at trial in respect to which the defendant has no prior knowledge may result in a delay of the trial until such time as the defendant can reasonably present his objections at a hearing. It would seem, therefore, that it would be in the interest of the state, in all cases, to give the notice suggested by *Goodchild.* It is not, however, mandatory.

Regardless of our suggestion that the prosecutor should give notice of his intention to use a confession at trial, defense counsel is not absolved from all responsibility of securing a proper hearing when he has reason to know that the confession will be offered. In the instant case the confession came in at the preliminary examination. After the preliminary and prior to trial, the defense counsel apparently voiced his objection to the admission of the inculpatory statement. Under these circumstances when defense counsel knew the statement would probably be offered at trial, we conceive it to have been his duty to ask for a *Goodchild* type hearing prior to the commencement of the trial. It also appears that no objection was made to the time of the *Goodchild* hearing until the case was brought before this court on a writ of error. While we do not consider the procedure used herein to be the optimum, we are satisfied that defense counsel's failure to specifically ask for a *Goodchild* hearing prior to trial contributed to the procedure followed. In any event, defendant was not prejudiced as the result of the time at which the hearing was held.

Under the case law of this state, a defendant has no absolute right to pretrial discovery of statements which may be used in trial. Sec. 971.23 (1) of Assembly Bill 603,[1] which has been approved by the Judicial Council and is pending in the current session of the legislature,

[1] "971.23 **Discovery and inspection.** (1) DEFENDANT'S STATEMENTS. Upon demand, the district attorney shall permit the defendant within a reasonable time before trial to inspect and copy or photograph any written or recorded statement concerning the alleged crime made by the defendant which is within the possession, custody or control of the state including the testimony of the defendant in an s. 968.26 proceeding or before a grand jury. Upon demand, the district attorney shall furnish the defendant with a written summary of all oral statements of the defendant which he plans to use in the course of the trial. The names of witnesses to the written and oral statements which the state plans to use in the course of the trial shall also be furnished."

would give to the defendant a limited right to pretrial discovery in that certain statements concerning the alleged crime made by the defendant must be produced prior to trial upon demand. The adoption of that statute would bring Wisconsin criminal procedure substantially in line with the recommended procedures of the American Bar Association Project on Minimum Standards for Criminal Justice as set forth in *Standards Relating to Discovery and Procedure Before Trial,* 1969.

### *Did the court commit prejudicial error in announcing its Goodchild findings to the jury*

The defendant also contends that the trial judge committed prejudicial error in giving his ruling in the presence of the jury following the *Goodchild* hearing. It is contended that in the presence of the jury the trial judge stated:

"The court doesn't believe under the circumstances existing here the officers—that it was required for him to have been informed as to the *Miranda* Decision and this was a statement defendant volunteered and it is therefore admissable in the trial and in the further proceedings in relation to this case."

The deplorable state of the stenographic notes makes it difficult to determine whether the jury was in fact present at the time this statement was made. It is clear that when the *Miranda* objection was first raised, the judge announced from the bench that the jury was excused until early in the afternoon. The findings were made sometime prior to the noon recess, and it is reasonable to conclude that the statement was not in fact made in the presence of the jury. However, to buttress the defendant's arguments, just prior to the statement of the findings by the judge, the record shows the entry, "The jury returned to the courtroom after arguments by counsel." An exact determination of whether the jury

was present cannot be made from this record. The comment of the judge should, however, be limited to the finding that the statement is admissible. A restatement of the objection and the overruling of the objection is unnecessary. Nevertheless, we see herein no prejudice to the defendant. The objection on initial argument on the *Miranda* basis by the defendant's trial counsel was made in the presence of the jury, and it was not until the judge recognized the impropriety of discussing the admissibility of evidence before the jury that the hearing was held in the absence of the jury. Furthermore, the usual admonitions were given to the jury before its deliberations advising them that the mere fact that a confession had been admitted in evidence was not to be taken as the judge's determination that it was either trustworthy or credible. Under these circumstances, we see no prejudice to the defendant.

### Adequacy of record

Defendant also contends that because "The transcript of the trial is replete with errors both in form and substance," he is denied a meaningful review of the trial.

We do not find this argument persuasive when directed to the question whether there should be a reversal in the interest of justice. The test used is whether from the record there appears to have been a miscarriage of justice to the degree that convinces us that the defendant ought not to have been found guilty and that a new trial properly conducted would probably result in an acquittal. *Lock v. State* (1966), 31 Wis. 2d 110, 118, 142 N. W. 2d 183.

Defendant does not assert that the condition of the record contributed to an error in the jury's verdict. It obviously had nothing to do with it. Moreover, defendant on this review has pointed out to the court where the rec-

ord shows evidence of alleged error. We have had no difficulty following his argument.

Clearly, this record, the transcript, and the reporting therein are something less than a model for appellate practice. The record and transcript are improperly numbered, and it is clear that on occasion statements attributed by the reporter to the prosecutor were in fact made by defense counsel.

The rules of this court, however, make the appellant or plaintiff in error responsible for a proper filing of the record and transcript. Sec. (Rule) 251.29, Stats. The procedure for amending the record (if necessary) and for approval is outlined in sec. 274.117. The responsibility of seeing to it that only an accurate and complete transcript and record is approved is upon the appellant.

In the instant case the confusion in the transcript, *e.g.*, was the jury in the box when the judge rendered his findings following the *Goodchild* hearing, could easily have been obviated by stipulation of the parties prior to the trial judge's approval or by a hearing on the objections to the transcript before the trial judge. The errors upon which defendant now relies for a new trial could best have been rectified upon the initiative of defendant's counsel. Apparently, the first objection to the record was made in this court and not in the trial court, where errors might have been corrected.

While the failure to provide a completely proper record has resulted in additional, and unnecessary, work for this court, the parties do not seriously dispute what happened at trial. Under those circumstances, we do not see that the cause of justice would be served by ordering a new trial.

Reference is also made to the "inherently incredible" testimony of one Van Ark. This contention is based upon the fact that he testified that the defendant on the morning of May 30th was wearing a light-colored jacket, while the police testified that, at the time of arrest some forty-

one hours later, he was wearing a dark jacket. Obviously the testimony is not incredible as a matter of law. It was proper for the jury to determine the weight to be given to the testimony even though some testimony might be at variance or in dispute.

*By the Court.*—Judgment and order affirmed.