STATE, Plaintiff-Appellant, v. Donald T. MAZUR, Defendant-Respondent. [Case No. 76–735–CR.]†
STATE, Plaintiff-Appellant, v. Donald T. MAZUR, Defendant-Respondent. [Case No. 77–685–CR.]†

Supreme Court

*Nos. 76–735–CR, 77–685–CR. Argued May 31, 1979.—Decided June 29, 1979.*
(Also reported in 280 N.W.2d 194.)

† Motions for reconsideration denied, without costs, on July 30, 1979.

294

For the appellant the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondent the cause was argued by *Michael Yovovich,* assistant state public defender, with whom on the brief was *Howard B. Eisenberg,* state public defender.

BEILFUSS, C.J. In the Washington County case, [#76–735–CR], a criminal complaint was filed on October 29, 1976, charging the defendant, Donald T. Mazur, with felonious possession of a burglarious tool and theft of movable property in violation of secs. 943.12 and 943.20 (1) (a) and (3) (b), Stats. The charges were based upon the October 3, 1976 burglary of the Hart Oil Station at West Bend, Wisconsin, where the defendant Mazur was employed as a station attendant. A preliminary examination was conducted on November 9–10, 1976, and the defendant bound over to circuit court for trial upon a finding of probable cause as to both counts.

At the preliminary hearing the manager of the station testified about $2,100 had been taken from a safe kept in the station. He also testified that Mazur had been employed as a station attendant for just a few days

and that he was given a key to the station. Mazur had been alone at the station the night before and was to close the station about 10:30. The burglary was discovered the next morning about 5 a.m.

The state also called Detective Paul Hetebrueg who searched Mazur's car and seized a chisel found in the trunk. The state additionally called two expert witnesses. One, a safe technician, testified that the safe was in an unlocked position when the dial was broken off. The other, an FBI expert on tool mark identification, testified that the marks on the safe dial could only have been made by the chisel found in Mazur's car.

Prior to trial the defendant Mazur moved to suppress the chisel and the written and oral statements given to police officers while in custody in the Manitowoc county jail on December 8, 1976.

A hearing was held on May 27 and 31, 1977, before Judge MERRIAM. The defendant Mazur and Detective Paul Hetebrueg of the West Bend Police Department, the only witnesses, each testified about the circumstances which surrounded the search of the vehicle during which the chisel was discovered and seized and the giving of the statement on December 8, 1976 at the Manitowoc county jail in which the defendant admitted involvement in more than ten burglaries in Wisconsin, including the incidents in West Bend, Washington County, and Beaver Dam, Dodge County under consideration here. The testimony focused on two critical points: Whether the defendant consented to the search which resulted in the seizure of the chisel; and whether the defendant waived his right to counsel before making incriminating statements. The trial court found for the defendant on both issues. An order was entered on June 3, 1977 suppressing the chisel and the oral and written statements. The trial court, in a detailed decision read from the bench and entered on the record, set forth its reasons for the order. With respect to the chisel, the court found that

while the defendant authorized the initial search of the car, the second search and the seizure of the chisel at that time was done without the defendant's consent and in violation of the defendant's constitutional rights. With regard to the statement made to the police officers at the Manitowoc jail, the court concluded that because the defendant had been bound over for trial after a preliminary hearing "[t]he state no longer had a right to interrogate him further." The court then ruled that there was a violation of the due process clause of the Fourteenth Amendment to the United States Constitution and that the statement was constitutionally contaminated and must be suppressed.

On September 13, 1977, a criminal complaint was filed in the County Court of Dodge County charging Donald Mazur with the burglary of Wodill's Tap, a tavern in Beaver Dam, Wisconsin, on September 7, 1976 in violation of sec. 943.10(1)(a), Stats. [Case #77–685–CR]. On the same day a warrant was issued for his arrest. A preliminary hearing was held on October 31, 1977. Lauren Wodill, operator of the tavern, testified that the tavern was broken into through the basement and that entry was gained to the bar by drilling holes through the cellar door. He also identified Mazur as the man who spent about eight hours in the tavern during the afternoon and evening preceding the burglary. Detective Paul Hetebrueg and Detective James Schwartz testified that the defendant in the statement given on December 8, 1976, admitted that in September, 1976 he entered a Beaver Dam tavern by drilling a hole through the basement door and tearing open the trap door between the cellar and the bar. On the basis of the evidence, probable cause was found and the defendant was bound over to the circuit court for trial.

As in the Washington County case, Mazur moved for the suppression of the December 8, 1976 statement on the ground that it was procured in violation of his Sixth

Amendment right to counsel. As an additional ground
the defendant asserted the *res judicata* effect of the
prior decision of the trial court in the Washington
County action which suppressed the same statement on
constitutional grounds. A full evidentiary hearing was
not held on the motion in the Dodge County action. The
parties stipulated that the circuit court could decide the
matter on the relevant portions of the transcript of the
suppression hearing for the West Bend service station
burglary action held in the Circuit Court for Washing-
ton County and the relevant portions of the preliminary
hearing for the Beaver Dam tavern burglary case held
in the County Court for Dodge County. In addition, a
limited hearing was held on January 18, 1978 to allow
the parties to present further evidence regarding the
circumstances surrounding the giving of the statement
on December 8, 1976. Only the defendant testified at
this proceeding.

In a written decision dated January 20, 1978, the
trial court in the Dodge County action adopted the find-
ings in the decision of the Washington County Circuit
Court and made further findings based on the testimony
of the defendant at the limited evidentiary hearing on
the motion. Like the trial court in the Washington
County action, the Dodge County Circuit Court deter-
mined that there was no proof to the degree of proof
required that there was a knowing and willing waiver
and emphasized that the fact counsel had been appointed
was an important consideration in this conclusion. Al-
though the applicability of the doctrine of collateral
estoppel was raised by the court, the decision expressly
stated that the court made its determination "inde-
pendently, on all evidence before it." On February 1,
1978 an order was entered in the Circuit Court for Dodge
County suppressing the oral and written statements
on the ground that the defendant's right to counsel

guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution was violated by the actions of the West Bend police officers in procuring the statements of December 8, 1976.

The issues for our determination are:

1. Must the appeal in #76–735–CR be dismissed for lack of jurisdiction in light of the fact that the original notice of appeal by the state erroneously referred to the date of the oral decision of the circuit court?

2. Was the seizure of the chisel from the trunk justified on the basis that the defendant had given his consent to the search of the vehicle?

3. Did the state meet its burden to prove that the defendant knowingly and intelligently waived his right to counsel prior to giving the statement on December 8, 1976?

The defendant-respondent argues that the appeal in Case #76–735–CR, which arises out of the burglary of the service station in West Bend, should be dismissed on jurisdictional grounds. This issue was previously raised by the defendant in a motion to dismiss which was denied by this court in an order dated December 1, 1977. The defendant asks the court to reconsider its determination of the jurisdictional issue. We decline to do so, the notice of appeal as amended clearly satisfied the appellate jurisdictional requirements.

The matter of the suppression of the chisel found in the trunk of the car that was in the defendant's possession pertains only to the Washington County case.

The basic constitutional rule applicable to searches and seizures is that warrantless searches are *per se* unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions.[1]

---

[1] *Johnson v. United States*, 333 U.S. 10, 13–14 (1948); *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971).

One of the exceptions permits a search of property without a warrant and without probable cause, when there is proper consent voluntarily given.[2]

In the present case the state maintains that the seizure of the chisel was incident to a valid and reasonable search undertaken with the consent of the defendant. When a prosecutor seeks to rely upon consent to justify the lawfulness of a search he has the burden of proving that consent was freely and voluntarily given.[3] The issue thus presented is whether the defendant freely and voluntarily consented to the search which resulted in the seizure of the chisel by officers of the West Bend Police Department.

Detective Paul Hetebrueg, the investigating officer, was at the Hart Oil Station on the morning of October 4, 1976. According to the officer's testimony, defendant Mazur arrived at the service station that morning at approximately 7 a.m. A short time thereafter, Hetebrueg asked Mazur if he would allow the police to search the 1972 Chevrolet he was driving. Hetebrueg testified that he explained to Mazur that he did not have to let him search the vehicle. Mazur consented. He filled out and signed a consent form which authorized the search of the automobile then located at the Hart station. Mazur then gave the detective the keys to the car. Hetebrueg discovered the chisel in question in a tool box in the trunk of the automobile. However, he

[2] *United States v. Matlock,* 415 U.S. 164, 165 (1974); *State v. McGovern,* 77 Wis.2d 203, 211, 252 N.W.2d 365 (1977).

Sec. 968.10(2), Stats. (1975) reads: "**Searches and seizures; when authorized.** A search of a person, object or place may be made and things may be seized when the search is made:

". . .

"(2) With consent; . . ."

[3] *Id. See also Schneckloth v. Bustamonte,* 412 U.S. 218, 222 (1973), and *Bumper v. North Carolina,* 391 U.S. 543, 548 (1968).

did not remove the tool from the trunk at that time. It was later the same day, after an examination of the dial of the service station safe aroused suspicion that certain marks might have been produced by a chisel, that Hetebrueg returned to the vehicle which by this time had been removed to the residence of Mazur's female companion and seized the chisel.

The fundamental issue here is a factual one, namely, the scope of the defendant's consent. The standard for review of a suppression hearing is whether findings of the trial court are against the great weight and clear preponderance of the evidence.[4]

The trial court found that the defendant authorized a search of the 1972 Chevrolet automobile located at the Hart Oil Station, that the search was made, that certain observations were made and the car was then closed. The trial court also found that later in the day, in the absence of Mr. Mazur and after the vehicle had been removed from the station, a second search was made by Detective Hetebrueg. The chisel was seized at the time of the second search.

The record made at the suppression hearing does not indicate one way or the other whether consent was given to search the automobile in the afternoon at the different location.

Most certainly the officer had probable cause to believe the chisel was used in the burglary and that it was in the trunk of the car—he had seen it there in the morning. In a sense it was not a search at all but only a seizure of an item the previous search revealed. It was not a prying into concealed areas in such a manner so as to be an unwarranted and unreasonable invasion

---

[4] *State v. Pires*, 55 Wis.2d 597, 603, 201 N.W.2d 153 (1972), and *Kelly v. State*, 75 Wis.2d 303, 311, 249 N.W.2d 800 (1977).

of privacy. The seizure of the chisel was not so removed from the consent given in the morning either as to time or place to be constitutionally offensive.[5]

As a further and perhaps more persuasive reason for denying the motion to suppress the chisel from the evidence we conclude from the entire record that the defendant did in fact consent to the second search, if it be a search, in the afternoon. At the suppression hearing neither the state nor the defendant pursued the question of consent. However, at the preliminary the testimony of Detective Hetebrueg when testifying as to the seizure reveals the following:

"Q. Did the Defendant again consent to a search of the trunk?
"A. Yes, he [the defendant] did."

Nowhere in the record of the preliminary examination nor the suppression hearing is this statement of consent challenged.

The transcript of the preliminary hearing is a part of the record in this case.[6] The trial court and the appellate court can take judicial notice of the contents of the record in the case it has under consideration. The finding of the trial court to the effect that the defendant did not consent to the second search made in the afternoon is against the great weight and clear preponderance of the evidence. We conclude the defendant did consent to the questioned search and that it was error to

[5] *United States v. Edwards,* 415 U.S. 800 (1974); *State v. Phelps,* 73 Wis.2d 313, 243 N.W.2d 213 (1976); *Molina v. State,* 53 Wis.2d 662, 193 N.W.2d 874 (1972).

[6] The trial court made note of the preliminary examination and the finding of probable cause in its decision on the motion to suppress.

grant the motion to suppress the chisel from the evidence to be presented at trial.

On December 8, 1976, Donald Mazur, who was then in custody at the Manitowoc county jail on charges other than the ones issued against him in the cases being considered on this appeal, made a statement to Detective Paul Hetebrueg and Detective James Schwartz of the West Bend Police Department. The statement was first given orally and then taken down in writing by Detective Hetebrueg. It detailed Mazur's involvement in over ten burglaries in the State of Wisconsin during 1976, including the burglary of the Hart Oil Station and the burglary of an unnamed tavern in Beaver Dam. The statement was prefaced by a list of "conditions" which were also transcribed by the detective. The prefatory paragraphs provide as follows:

"I will give the above Officers a statement under the following conditions.

"1. The charge of attempted burglary in the City of Manitowoc, for which I am presently being held, be consolidated with any and all other charges at West Bend.

"2. That I would receive concurrent time for all charges against me in Wisconsin.

"3. All charges against me in Wisconsin be consolidated and heard in West Bend.

"4. As soon as all legalities can be worked out that I be transferred to the Washington Co. Jail in West Bend, Wis.

"5. That my bond at West Bend be revoked and that the money posted be returned to the party who posted it for me, Kathy Schlegel.

"6. That this statement in its entirety be null and void until witnessed by my attorney in West Bend, Mr. John Limbach.

"7. Prior to sentencing a psychiatric evaluation of me be conducted.

"In consideration for the above I agree to plead guilty to all charges against me in Wisconsin and any charges

that may be placed against me as a result of information I am about to give."

The entire statement was the subject of a pretrial motion to suppress filed by the defendant in both the Washington County action, which was commenced against Mazur for the burglary of the Hart Oil Station in West Bend in October, 1976, and the Dodge County action, which was based on the burglary of Wodill's Tap in Beaver Dam in September of the same year. In both cases the trial court gave great weight to the sixth condition in the statement and particularly relied on the language of the Supreme Court in *Massiah v. United States,* 377 U.S. 201 (1964), and *Brewer v. Williams,* 430 U.S. 387 (1977). Both courts concluded that the statement was procured in violation of the defendant's rights to the assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and entered orders suppressing the statement for use at trial. The issue on this appeal is whether the conclusion of the two trial courts that the state failed to meet its burden of proving that the defendant knowingly and intelligently waived his right to counsel was wrong.

The right to the assistance of counsel, guaranteed by the Sixth and Fourteenth Amendments, is indispensable to the fair administration of our adversary system of criminal justice. The guiding hand of counsel is essential to advise a defendant of his rights and provide him with legal aid at the pretrial stage as well as at the trial itself.[7] Effective assistance of counsel in advance of trial is critical to the preservation and protection of rights at trial. This assistance is particularly important

---

[7] *Brewer v. Williams, supra* at 398. *See also Powell v. Alabama,* 287 U.S. 45, 57 (1932).

when, as in the present case, statements are taken from an individual during interrogation.

While there is disagreement among the jurisdiction as to how far this right extends, it is clearly established that a person is entitled to the assistance of counsel "at or after the time that judicial proceedings have been initiated against him." *See* cases cited in *Brewer v. Williams, supra* at 398. There can be no doubt in the Washington County case that judicial proceedings had been initiated against Mazur prior to the taking of the statement on December 8, 1976. In the Washington County case the defendant had been formally charged, a preliminary examination had been held and the defendant had been bound over for trial.[8] On the day of the statement the defendant was being held in the Manitowoc county jail on a separate charge for an attempted burglary in the City of Manitowoc and an attorney had been appointed for him in connection with that charge. The defendant was entitled to the assistance of counsel, guaranteed him by the Sixth and Fourteenth Amendments, during the interview which took place between the defendant and Detectives Hetebrueg and Schwartz in the "identification room" of the Manitowoc county jail.[9]

[8] In the Dodge County suppression hearing the defendant testified that on November 30, 1976, he asked the Manitowoc authorities to contact Detective Hetebrueg of Washington County for him.

[9] Both trial courts and the parties in the two cases proceeded on the theory that the interview between Mazur and the West Bend detective was an interrogation, although the two courts made conflicting findings as to which party initiated the confrontation of December 8, 1976. This assumption is critical to the preliminary conclusion that Mazur was entitled to the assistance of counsel when he made the statement, since this constitutional protection would not have come into play had there been no interrogation. *See Brewer v. Williams, supra* at 400.

It remains to be determined whether, as the state contends, Mazur waived his right to counsel prior to giving the statement. One preliminary matter should be addressed. Both trial courts emphasized the fact that an attorney, indeed two attorneys (Dodge County and Manitowoc County) had been appointed for Mazur prior to the December 8, 1976 confrontation and that the police officers did not advise the defendant's attorney that they intended to talk to him. Nor did the defendant ask the interrogating officers for the presence or assistance of either of his attorneys. Neither court, however, based its decision on the premise that under such circumstances the accused could not waive his right to counsel. *Brewer* makes it clear that he can.[10]

"The Court of Appeals did not hold, nor do we, that under the circumstances of this case Williams *could not,* without notice to counsel, have waived his rights under the Sixth and Fourteenth Amendments. It only held, as do we, that he did not." *Brewer, supra* at 405–06.

In *Schilling v. State,* 86 Wis.2d 69, 81, 271 N.W.2d 631 (1978), this court summarized the standards which apply on review of an order granting a motion to suppress a statement made by the accused:

---

[10] This is not to suggest that the fact that the accused has obtained the services of a lawyer is not significant. It is. As was noted in *Michigan v. Mosley,* 423 U.S. 96, 110, fn. 2 (1975):

"It is sufficient to note that the reasons to keep the lines of communication between the authorities and the accused open when the accused has chosen to make his own decisions are not present when he indicates instead that he wishes legal advice with respect thereto. The authorities may then communicate with him through an attorney. More to the point, the accused having expressed his own view that he is not competent to deal with the authorities without legal advice, a later decision at the authorities' insistence to make a statement without counsel's presence may properly be viewed with skepticism." [Mr. Justice WHITE concurring.]

"While the state has the burden 'to show beyond a reasonable doubt that statements or confessions are admissible, on review by this court the test is whether the findings by the trial court were contrary to the great weight and clear preponderance of the evidence.' *State v. Parker*, 55 Wis.2d 131, 135, 197 N.W.2d 742 (1972). *See also Roney v. State*, 44 Wis.2d 522, 533, 171 N.W.2d 400 (1969), and *State ex rel. Goodchild v. Burke*, 27 Wis.2d 244, 133 N.W.2d 753 (1965)."

This standard applies only insofar as the appeal involves a review of evidentiary or historical physical facts. *Cf. State v. Pires*, 55 Wis.2d 597, 603, 201 N.W.2d 153 (1972). The question of waiver, as *Brewer* emphasized, is not a question of historical fact, but one which requires "application of constitutional principles to the facts as found. . . ."[11] The Supreme Court in *Brewer*, at 404, analyzed the correct constitutional standard as follows:

"The District Court and the Court of Appeals were also correct in their understanding of the proper standard to be applied in determining the question of waiver as a matter of federal constitutional law—that it was incumbent upon the State to prove 'an intentional relinquishment or abandonment of a known right or privilege.' *Johnson v. Zerbst*, 304 U.S., at 464. That standard has been reiterated in many cases. We have said that the right to counsel does not depend upon a request by the defendant, *Carnley v. Cochran*, 369 U.S. 506, 513; cf. *Miranda v. Arizona*, 384 U.S., at 471, and that courts indulge in every reasonable presumption against waiver, *e.g., Brookhart v. Janis, supra*, at 4; *Glasser v. United States*, 315 U.S. 60, 70. This strict standard applies equally to an alleged waiver of the right to counsel whether at trial or at a critical stage of pretrial proceedings. *Schneckloth v. Bustamonte*, 412 U.S. 218, 238–240; *United States v. Wade*, 388 U.S., at 237."

[11] *Brown v. Allen*, 344 U.S. 443, 507 (1953) [separate opinion Mr. Justice FRANKFURTER]. *See also Townsend v. Sain*, 372 U.S. 293, 309 n. 6, 318 (1963); *Brookhart v. Janis*, 384 U.S. 1, 4 (1966).

Although the question of waiver is ultimately a question of federal constitutional law, resolution of the issue in this appeal requires an analysis of the circumstances surrounding the alleged waiver.

Donald Mazur at the time of the interrogation possessed a twelfth grade education. He had extensive prior experience with the criminal process in several states, including numerous *Miranda* warnings. He had been informed of his constitutional rights by the officers handling the investigation of the burglaries involved in the present cases on several occasions prior to December 8, 1976, the date of the incriminating statement. On three occasions he signed a waiver of his rights and agreed to answer the officers' questions. On one occasion he asserted his right to remain silent and the interview ceased. At his arraignment in the Washington County action on October 29, 1976, Mazur asked for counsel and one was appointed for him. However, according to Mazur's testimony at the limited evidentiary hearing on the motion held in the Dodge County action, the jailer at the Manitowoc county jail made it impossible for him to contact his attorney. The Dodge County Circuit Court specifically referred to this testimony, which was not contradicted by the state at the hearing, in its decision. However the record is clear that he did not ask the interrogating officers either before or during the challenged statement for the presence or advice of his attorney although he knew he could do so.

On the evening of December 8, 1976, Detectives Hetebrueg and Schwartz met with Mazur in the identification room of the Manitowoc county jail. Hetebrueg testified that he informed the defendant what they were there for, *i.e.*, "to talk about a burglary that had occurred in October." He further testified that he then informed him "that he had the right to remain silent; he was not required to tell me anything; anything he

would choose to tell me could be used against him in Court; he had a right to consult with an attorney or have an attorney present when I talked to him, and if he could not afford an attorney, one could be hired to represent him at no cost to him." The defendant, in answer to questions put to him by Hetebrueg, indicated that he understood his rights, that he did not have any questions and that he was willing to answer questions concerning the burglary. He then signed a waiver of rights form. Hetebrueg testified that he first went through the statement orally with Mazur and then wrote it out in longhand. After the confession had been written out, Mazur said he would not sign it unless in the presence of his attorney. With respect to the conditions which preceded the statement, Hetebrueg testified in the Washington County action as follows:

"I let him dictate to me what he wanted in there as far as conditions went. I told him it was his statement, he should tell me what he wanted and I would write it down."

"I told him it was his—whatever conditions he wanted for—he wanted in the statement, he should tell us and we would—I would write it down, it was his statement."

Hetebrueg declared that he never promised the defendant anything, that he made no representation regarding whether the conditions would be completed, and that he only said that he would bring it back and present it to the district attorney and his (the defendant's) attorney. Hetebrueg admitted there was an agreement that he would try and set up a meeting at which Mazur, Mazur's attorney, the district attorney and the investigating officers would be present. However, Hetebrueg stated that this agreement was made after the statement was made, when Mazur declined to sign. The officer admitted that he had no idea what the defendant was thinking of when he mentioned his sixth condition,

*i.e.,* the one which declared "that this statement in its entirety be null and void until witnessed by my attorney in West Bend, Mr. John Limbach." He did not question Mazur as to what he meant.

Donald Mazur's testimony regarding the circumstances surrounding the giving of the statement on December 8, 1976—particularly his testimony pertaining to the sixth condition—differs substantially. Mazur testified that at the outset of the interrogation he stated he had some information regarding the burglary, but he "would like to have certain things done." He declared that after each condition, he (Hetebrueg) would ask—"Is there anything else you would like; is there any other condition. . . ." Although he knew the officers did not have authority to bind the district attorney, he felt he was bargaining directly with the officers themselves. His testimony regarding his understanding of the "agreement" is revealing:

"[I understood] that anything I said pursuant to this statement would be not—would not be vaild unless my attorney was present, the District Attorney was present, the officers were present, and myself, that I signed this statement, and that all be witnessed by such people, and that all the conditions are met within the statement."

"With the conditions put down as it was, I assumed that the statement could not be used against me in any way whatsoever unless those conditions were met to the full extent."

With specific regard to his constitutional rights, Mazur declared as follows: he knew he had the right to have an attorney present; he knew he had the right to remain silent; he knew "to a certain extent" that any statements he made could be used against him; he knew he had the right to stop answering questions. When asked why he entered into the agreement if he understood all those rights, Mazur gave the following response:

"I believed that conditions that I had asked for would be imposed, and that even though I may have known the Miranda rights and everything, that within those conditions, nothing could be used against me unless those conditions were followed through."

Both trial courts indicated that the issue of whether the defendant had knowingly and intelligently relinquished his right to counsel hinged on the conditions first set forth in the defendant's statement. The Dodge County trial court noted that several of the conditions contained in the statements dealt with the very things for which assistance of counsel is usually needed. Based on the evidence, the trial court in the Dodge County action concluded—"There was no proof to the degree of proof required that there was a knowing and willing waiver." The trial court in the Washington County action reached a similar conclusion, declaring that the sixth condition made at the beginning of the defendant's statement made the effect of the written waiver questionable. The conditions listed by the defendant at the start of his statement, particularly the sixth paragraph which implicitly invokes the assistance of counsel, raise a serious question as to whether the defendant knowingly and intentionally waived his right to counsel.

From the authorities and discussion set forth above, it is apparent this defendant could have waived the presence of counsel even though one had been appointed. The appointment and assistance of counsel is constitutionally important and waiver should not be found except upon proof that satisfies the judge as trier of the fact beyond reasonable doubt that the defendant knowingly and intentionally waived this right.

The defendant here was sophisticated in the ways of the administration of the criminal law. He clearly knew his constitutional rights; he was repeatedly given the *Miranda* warnings and acknowledged he understood

them. He had no right to impose the conditions he did and the officers had no right to agree to any such conditions. Despite the defendant's testimony to the contrary, it is very probable he knew the law enforcement officers had no such authority. He knew that he could have counsel present at the time of the statement and that he could cease the interview or statement at any time. Upon this state of the record we would affirm a finding that defendant knowingly and voluntarily waived his right to presence of counsel. However it does not necessarily follow that a contrary finding is against the great weight and clear preponderance of the evidence.

The sixth condition that the statement was null and void unless approved by his attorney is not a condition that the defendant could legally impose. However, the record does not reveal that the defendant was told the condition was not binding; it does reveal his testimony which indicates he thought it was binding upon the law enforcement officials. The legal issue is whether he knowingly and voluntarily waived the presence of counsel. If he actually believed he had the right to impose the condition, albeit a legally erroneous belief, it remains a question of fact as to whether there was an intelligent, knowing and voluntary waiver of counsel. This factual determination must be made by the trier of fact based upon all the factors upon which credibility is determined. Here both trial courts found he did not knowingly and intentionally waive counsel. This finding is not against the great weight and clear preponderance of the evidence and both orders suppressing the statement of December 8, 1976 must be affirmed.

*By the Court.*—In case #76–735–CR, that part of the order suppressing the introduction of the chisel is reversed; that part of the order suppressing the statement of December 8, 1976 is affirmed.

In case #77–685–CR, the order is affirmed.

WILLIAM G. CALLOW, J. *(dissenting)*. The majority determines that on the record presented it would affirm findings that the defendant knowingly and voluntarily waived his right to the presence of counsel. The majority then determines the trial courts' findings, that the defendant did not knowingly and voluntarily waive his right to counsel, was not against the great weight and clear preponderance of the evidence. I disagree.

The waiver rule of *Johnson v. Zerbst*, 304 U.S. 458, recently reaffirmed in *North Carolina v. Butler*, — U.S. —, 99 S. Ct. 1755, 60 L. Ed.2d 286 (1979), requires the determination be made on "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson, supra* at 464.

The defendant had substantial experience in criminal matters, acknowledged he fully understood his *Miranda* rights, and proceeded to make incriminating statements without his lawyer's presence and advice in an effort to aggressively negotiate a deal which he considered advantageous to him. He outsmarted himself in his effort to deal, but that did not result from any lack of knowledge of his right to have counsel present.

I conclude the trial courts' findings on this issue are against the great weight and clear preponderance of the evidence and would reverse.