No. 46,874

STATE OF KANSAS, *Appellee*, v. JAMES CARPENTER, *Appellant*.

(505 P. 2d 753)

Opinion filed January 20, 1973.

*George A. Groneman,* of White & Groneman, of Kansas City, argued the cause, and was on the brief for the appellant.

*Nick A. Tomasic,* chief deputy county attorney, argued the cause, and *Vern Miller,* attorney general, and *Francis D. Menghini,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by the defendant in a criminal action from a conviction of second degree burglary (K. S. A. 21-520). The defendant was convicted by a jury in the district court of Wyandotte County, Kansas, and thereafter was sentenced to a term of confinement in the Kansas State Penitentiary at Lansing, Kansas, for not less than ten nor more than twenty years pursuant to K. S. A. 21-523 and K. S. A. 21-107a.

The points asserted on appeal involve the admission of evidence at the trial regarding: (1) an oral confession; and (2) a prior conviction for petty larceny pursuant to K. S. A. 60-455.

Sometime during the early morning hours of October 31, 1969, James Carpenter (defendant-appellant) and another individual, James Campbell, were arrested while inside the Harding Glass Com-

pany building located in Kansas City, Kansas. The appellant was transported in a squad car to the Kansas City, Kansas, police department headquarters and was read a waiver of rights form by Harold Brown, a police detective. The waiver of rights form was in two paragraphs. The first paragraph was captioned "Your Rights", and complied substantially with the requirements of *Miranda,* except that it added: "We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court." The second paragraph was captioned "WAIVER". The appellant refused to sign the waiver form and the officer inserted these words in the place of the signature: "REFUSED TO SIGN JAMES WILLIAM CARPENTER."

At the trial Officer Brown testified that after the appellant refused to sign the waiver form, the appellant was asked if he would discuss the crime orally. The officer testified the defendant then orally admitted running out of gas near the Harding Glass Company, being without funds to purchase more gas, and breaking into the Harding Glass Company building.

The appellant presented testimony at the trial in conflict with that of the officer. The appellant testified the officer asked him what he was doing in that neighborhood and he told the officer he had run out of gas and had parked his automobile around the corner. The appellant testified when Officer Brown asked him about the building, he told the officer he had nothing more to say until he had seen *his* lawyer and that he was then taken back upstairs.

Captain Brown also testified the appellant had orally told him that he opened the back door of the glass company with a yellow handled screwdriver. The appellant was questioned about this statement during his examination. He testified he did not mention opening the back door of the glass company nor did he mention a yellow handled screwdriver. The appellant once again stated he only told the officer that he ran out of gas, parked the car around the corner, told the officer what kind of car he had and what color it was and that he then refused to answer any more questions.

On cross-examination the following colloquy between the prosecutor and the appellant took place:

"Q. During the conversation that you had with Captain Brown and prior to any admission or any statement that you did make were any threats made by Captain Brown to you?

"A. No Sir.

"Q. Any promises made?

"A. No Sir.

"Q. He did read to you that waiver of rights?

"A. This here? (INDICATING.)

"Q. Did you understand them at the time he read them to you?

"A. Yes Sir.

"Q. After he read them to you then he told—you told him you were not going to sign any waiver of rights and you weren't going to sign the statement?

"A. Wasn't going to sign a statement.

"Q. Did you tell him you would make an oral statement to him?

"A. No, he asked me a question and I answered it and he asked me another question and I said I had nothing to say until I had seen *my lawyer and talked to him about it* and I was taken upstairs." (Emphasis added.)

The appellant contends the trial court committed reversible error when it admitted, over his objections, evidence in the form of Officer Brown's testimony of an oral confession made by the appellant at the police station. The appellant contends the state failed to properly advise him of his right to the presence of counsel during interrogation.

In *Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, the court said:

".  .  . when an individual is taken into custody  .  .  . and is subjected to questioning, the privilege against self-incrimination is jeopardized .  .  . unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are *required*. He *must* be warned prior to any questioning that  .  .  . *if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.*" (Emphasis added.) (p. 478, 479.)

While the warning given the appellant of his constitutional rights herein contained the erroneous statement that "We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court", (*Fendley v. United States*, 384 F. 2d 923 [C. C. A. 5th 1967]; *Windsor v. United States*, 389 F. 2d 530 [C. C. A. 5th 1968]; *Gilpin v. United States*, 415 F. 2d 638 [C. C. A. 5th 1969]; and *United States v. Garcia*, 431 F. 2d 134 [C. C. A. 9th 1970]), it was harmless error beyond a reasonable doubt on the facts here presented. The appellant was advised by the arresting officer of his right "to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning." He was also advised: "You have this right to the advise and presence of a lawyer even if you cannot afford to hire one." (See *State v. Meeks*, 205 Kan. 261, 469 P. 2d 302.)

The appellant's testimony disclosed he had retained counsel of his own. It was therefore unnecessary to appoint an attorney for him. He also related that he fully understood his right to the advice of counsel while in custody before the officer asked him any questions. In the appellant's testimony he claims he asserted this right, whereupon the officer respected his request to refrain from asking further questions until "I had seen my lawyer and talked to him about it."

The United States Supreme Court has held that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. (*Chapman v. California*, 386 U. S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824; *Harrington v. California*, 395 U. S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726; and *Milton v. Wainwright*, 407 U. S. 371, 33 L. Ed. 2d 1, 92 S. Ct. 2174.)

The appellant argues he refused to sign a written waiver of his rights, and that it is clear from the testimony of Officer Brown the appellant never *expressly* waived his right to counsel, but only agreed to discuss the case with him orally after the officer asked him to do so. (Citing, *Sullins v. United States*, 389 F. 2d 985 [C. C. A. 10th 1968].) Here again the record discloses the appellant testified that he knew his rights, after having been given the warning, and he asserted them. A waiver of rights need not be in writing. On the facts in this case any oral admissions or confession made by the appellant, after proper advice was given him concerning his constitutional rights, was admissible in evidence.

The record shows that the appellant was represented by *retained counsel* from the time of his arrest until June 25, 1971, when the present counsel was appointed to represent him.

The appellant contends the trial court erred in admitting, over his objection, evidence of a prior conviction in Johnson County, Kansas, for petty larceny. He contends there was not sufficient similarity between petty larceny and burglary for the conviction to be admissible.

At the trial, a certified copy of a journal entry showing the appellant had plead guilty to petty larceny in Johnson County, Kansas, was admitted into evidence. The journal entry was dated September 8, 1970, and did not mention the date of the alleged offense or any facts surrounding the offense.

At the trial the appellant and James Campbell, with whom he

was riding, testified they ran out of gas in the automobile. Campbell then told the appellant he worked a block away and he would see if he could make a telephone call for some gas. After Campbell had gone, he returned to the automobile in a few minutes and asked the appellant to accompany him back to his place of employment. When they arrived at the Harding Glass Company the appellant followed Mr. Campbell into the building and had just entered when the Kansas City, Kansas, police arrived.

On the foregoing testimony the appellant asserted *mistake* on the part of the police in making the arrest. The petty larceny conviction was introduced as relevant evidence to show absence of mistake under K. S. A. 60-455. The jury was instructed generally concerning 60-455, *supra,* and the limited purpose for which the petty larceny conviction was relevant, without objection on the part of the appellant.

The information charged the appellant with feloniously breaking and entering the building with the intent to steal valuable things therein belonging to the Harding Glass Company. Under the foregoing facts and circumstances disclosed by the record reversible error is not indicated by the admission of the petty larceny conviction into evidence. (*State v. Jenkins,* 203 Kan. 354, 454 P. 2d 496.)

Evidence of another felony conviction (second degree burglary committed in September, 1962) was asserted by the prosecution to invoke the habitual criminal act.

The judgment of the lower court is affirmed.