JONES, Plaintiff in error, v. STATE, Defendant in error.

*No. State 193.  Argued May 8, 1975.—Decided June 30, 1975.*
(Also reported in 230 N. W. 2d 677.)

338

For the plaintiff in error there was a brief and oral argument by *Patrick J. Devitt* of the Legal Aid Society of Milwaukee.

For the defendant in error the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, J.  Several issues are raised on this review. The first and most important is adequacy of the warnings given by the police officer before the custodial confession was given to the officer by the defendant.

Defendant argues that his confession was inadmissible as evidence at the trial because he received an inadequate *Miranda* warning.  Specifically, he contends that while he was advised of his right to court-appointed counsel *at trial,* he was not advised of the right to court-appointed counsel prior to submitting to interrogation. We disagree. The warning, although not a model of clarity, was sufficient. We conclude, therefore, there was no error in admitting the confession into evidence.

After defendant was arrested at his mother's home on December 12th he was taken to the detective bureau where, in response to police interrogation, he confessed to his part in the robbery and killing. Prior to confession, defendant was warned of his rights by Officer Lamoyne Richardson, who described the warning as follows in the pretrial *Goodchild* hearing:

"I advised him that he had a right to remain silent and that he had a right to have an attorney and that if his attorney was present, he could sit in on the interrogation; that anything he said to me could be held against him when he appeared in court. By that I meant I could repeat in court what he said to me. *At the time he*

*appeared in court, he was also entitled to have an attorney. If he didn't have one, and he wanted one and didn't have any funds for one, the Courts would appoint him one. I also told him that he could have his interrogation terminated any time that he so desired, and I repeated that he had the right to remain silent if he wanted to.* I asked him if he understood his constitutional rights. He said, 'Yes,' and I asked him was there any questions regarding them.

"...

"He said no, he didn't have any questions regarding them." (Emphasis supplied.)

Jones said, according to Richardson, that he "didn't mind talking about" the incident.

When the admissibility of the confession was challenged at the *Goodchild* hearing, held prior to the trial, the trial court orally stated its conclusion that the warning as given satisfied the requirements of *Miranda v. Arizona,*[3] and that the defendant's statements were made voluntarily.

Before an inculpatory custodial statement may be received into evidence at trial, the state must prove first that defendant received a proper *Miranda* warning, and second that the statements were made voluntarily.[4] The trial court's findings of fact concerning these issues may not be upset unless they are against the great weight and clear preponderance of the evidence.[5] Here, defendant challenges only the sufficiency of the *Miranda* warning as it relates to his right to court-appointed counsel prior to interrogation.

We conclude that the warning given here does comply with the requirements of *Miranda.*

The specific *"Miranda"* warnings do not have to follow a "'ritualistic formula' which must be repeated without

[3] (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

[4] *McAdoo v. State* (1974), 65 Wis. 2d 596, 605, 223 N. W. 2d 521; *State v. Parker* (1972), 55 Wis. 2d 131, 135, 197 N. W. 2d 742; *Roney v. State* (1969), 44 Wis. 2d 522, 533, 171 N. W. 2d 400.

[5] *State v. Taylor* (1973), 60 Wis. 2d 506, 520, 210 N. W. 2d 873.

variation in order to be effective.' "[6] "Substance, not form, controls"[7] and the requirements of the warnings should not be a trap for the police who are attempting to give warnings that clearly indicate to the defendant that he is entitled to counsel and can have the interrogation ended at the time the warnings are given.

The particulars of warnings, similar to that involved here, have been tested against the mandate of *Miranda* in numerous federal and state appellate courts,[8] but not in the United States Supreme Court.[9]

In *United States v. Lacy*[10] the Fifth Federal Circuit Court of Appeals upheld a *Miranda* warning similar to the one given here. The court emphasized that while the defendant was told he was entitled to a court-appointed attorney only "if and when you go to court," he was also told that he need not answer any questions until he talked

[6] *Bohachef v. State* (1971), 50 Wis. 2d 694, 700, 185 N. W. 2d 339, quoting *United States v. Vanterpool* (2d Cir. 1968), 394 Fed. 2d 697.

[7] *Bohachef v. State, supra,* footnote 6, at page 700.

[8] *Courts approving: United States v. Lacy* (5th Cir. 1971), 446 Fed. 2d 511; *Wright v. North Carolina* (4th Cir. 1973), 483 Fed. 2d 405, certiorari denied, 415 U. S. 936, 94 Sup. Ct. 1452, 39 L. Ed. 2d 494; and *Massimo v. United States* (2d Cir. 1972), 463 Fed. 2d 1171, certiorari denied, 409 U. S. 1117, 93 Sup. Ct. 920, 34 L. Ed. 2d 700. *See also: Klingler v. United States* (8th Cir. 1969), 409 Fed. 2d 299; *State v. Carpenter* (1973), 211 Kan. 234, 505 Pac. 2d 753; *People v. Campbell* (1970), 26 Mich. App. 196, 182 N. W. 2d 4; *People v. Swift* (1969), 32 App. Div. 2d 183, 300 N. Y. Supp. 2d 639.

*Contra: United States ex rel. Williams v. Twomey* (7th Cir. 1972), 467 Fed. 2d 1248; *United States v. Garcia* (9th Cir. 1970), 431 Fed. 2d 134; *Coyote v. United States* (10th Cir. 1967), 380 Fed. 2d 305, certiorari denied, 389 U. S. 992, 88 Sup. Ct. 489, 19 L. Ed. 2d 484; *Square v. State* (1968), 283 Ala. 548, 219 So. 2d 377; *Schorr v. State* (Okla. Crim. 1972), 499 Pac. 2d 450; *State v. Creach* (1969), 77 Wash. 2d 194, 461 Pac. 2d 329.

[9] *See: Wright v. North Carolina* (1974), 415 U. S. 936, 94 Sup. Ct. 1452, 39 L. Ed. 2d 494 (DOUGLAS, J., dissenting from denial of petition for writ of certiorari).

[10] (5th Cir. 1971), 446 Fed. 2d 511.

to an attorney. Thus, reasoned the court, commingling these two statements, the defendant was, in effect, informed of his preinterrogation right to a court-appointed attorney. The court said:

". . . Lacy was informed that he had the right to the presence of an appointed attorney before any questioning. The agents did say that the appointment of an attorney would have to be made by the court at a later date. But they also made perfectly clear that Lacy had a right not to answer questions until that time should come. . . . [T]he defendant was informed that (a) he had the right to the presence of an attorney and (b) that the right was to have an attorney 'before he uttered a syllable.' That the attorney was not to be appointed until later seems immaterial since Lacy was informed that he had the right to put off answering any questions until the time when he did have an appointed attorney."[11]

*Lacy* thus holds that failure to warn of the right to immediate appointed counsel is rendered harmless by a further warning of the right to refuse to "utter a syllable" until the defendant speaks to an attorney. This rationale also has been adopted by two other federal appeals courts, and several state courts.[12]

The *Lacy* rationale represents a realistic and fair attempt to avoid the creation of a trap for police who are otherwise quite clearly, as here, attempting to comply with the substance of *Miranda*.

The defendant also claims that the trial court erred in refusing to give an intoxication instruction. We disagree. There was no error in the trial court's refusal of defense counsel's request for an intoxication instruction.

The defense of intoxication under sec. 939.42, Stats.,[13] may, if proved, negate the element of intent to kill requi-

---

[11] *Id.* at page 513.

[12] *See* cases cited in footnote 8.

[13] Sec. 939.42, Stats., provides in part: "Intoxication. An intoxicated or a drugged condition of the actor is a defense only if such condition:

". . .

site to a first-degree murder conviction.[14] To establish this defense, however, defendant must show more than that he was "very intoxicated."[15] He must prove that the actual effect of the alcohol on his mind was so severe that he was "utterly incapable" of forming the intent to kill.[16]

The standard applicable to determining whether defendant was entitled to his proffered instruction is whether, viewing the evidence in the light most favorable to the accused, a jury could reasonably have found that defendant was so intoxicated he lacked intent to kill.[17] We conclude that here a jury could not have so found.

The evidence shows that on the day before the killing defendant was drinking heavily and that that night he slept for some unspecified period of time. On the morning of the incident defendant had some more to drink. However, there is no evidence concerning the quantity of alcohol defendant consumed, or the time period in which he consumed it. More importantly, there is no evidence showing defendant was actually intoxicated at the time of the killing, much less than he was "utterly incapable" of forming the intent to kill. To the contrary, Sherry Henderson stated that at the time defendant entered the Salt and Pepper tavern, the defendant had been drinking but was not drunk. Moreover, her statement that defendant told her, at the time he was beating the victim, "to

"(2) Negatives the existence of a state of mind essential to the crime."

[14] *Gibson v. State* (1972), 55 Wis. 2d 110, 114, 197 N. W. 2d 813. The homicide that would otherwise qualify as first-degree murder could be reduced to second-degree murder. *Ameen v. State* (1971), 51 Wis. 2d 175, 184, 185, 186 N. W. 2d 206.

[15] *State v. Bailey* (1972), 54 Wis. 2d 679, 685, 196 N. W. 2d 664 (evidence that defendant was " 'very intoxicated,' . . . not probative of the degree of intoxication that would negative the requisite intent to kill.")

[16] *State v. Nemoir* (1974), 62 Wis. 2d 206, 211, 214 N. W. 2d 297.

[17] *See: Ross v. State* (1973), 61 Wis. 2d 160, 172, 173, 211 N. W. 2d 827.

sit down and not to move or he would kill me exactly like he was doing on him," indicated that defendant was, in fact, capable of forming the intent to kill. When defendant talked to the police nine days after the killing he claimed to have a vague recollection of the incident, but he was able to describe in detail the main events inside the tavern, including his assault upon the bartender. Defendant did not claim to the police officers that he had been drunk.

A further contention raised by the defendant is that there was prejudicial error in the prosecution's failure to produce Sherry Henderson's arrest record until the fourth day of the trial.

In a "Motion for Discovery and Demand for Disclosure" dated September 8, 1972, defense counsel requested the district attorney to disclose "the criminal records of any of the witnesses which the state intends to call at trial." On April 11, 1973, the third day of trial, defense counsel advised the trial court that the criminal record of Sherry Henderson had not been released. The trial court then ordered the prosecutor to produce the record by 3 p.m. that day. Later that day the prosecutor informed the court that efforts to obtain Henderson's record from both the Los Angeles police department and the FBI had failed, but that he was still trying to secure the record. Defense counsel then stated on the record:

"Our position is we are not accusing anyone of misconduct. All we are saying [is] that *before Sherry Henderson should be permitted to take the stand,* we should be permitted to have that record of any criminal convictions." (Emphasis supplied.)

Defense counsel then requested an order from the trial court authorizing him to secure the record and the trial court consented: "[Y]ou may have such an order." The record does not reveal, however, whether in fact defense counsel followed this up and whether a written order was actually issued. On the following day, the fourth day of

trial, the record was produced, prior to the time when Henderson took the stand.

On review the defendant now claims that the prosecutor's failure to supply the record sooner was error and that the error was prejudicial. It was neither.

Defendant does not argue that the conviction record qualifies as exculpatory evidence subject to disclosure under *Nelson v. State*[18] and *Brady v. Maryland.*[19] Instead, defendant's right to discovery here is statutory, under sec. 971.25 (1), Stats.:

"The district attorney shall disclose to the defendant, upon demand, the criminal record of a prosecution witness which is known to the district attorney."

This section, along with two companion discovery statutes, secs. 971.23 and 971.24, was created in 1969 as part of the comprehensive redrafting of Wisconsin's criminal procedure statutes.[20] Sec. 971.25 (1) has not previously been interpreted by this court.

Two aspects of this section must be considered here: (a) The prosecutor's duty to discover and disclose a non-Wisconsin criminal record; and (b) the time at which disclosure of the criminal record must occur.

(a) *Duty to discover and disclose non-Wisconsin criminal record.*

Sec. 971.25 (1), Stats., provides for disclosure of the criminal record of a prosecution witness "which is known to the district attorney." In *Wold v. State*[21] this court said:

". . . Under the American Bar Association Project on Standards for Criminal Justice, *Standards Relating to The Prosecution Function and The Defense Function* (Approved Draft), p. 100, sec. 3.11 (c), the prosecutor may not avoid pursuit of any evidence. The Commentary

---

[18] (1973), 59 Wis. 2d 474, 208 N. W. 2d 410.

[19] (1963), 373 U. S. 83, 83 Sup. Ct. 1194, 10 L. Ed. 2d 215.

[20] *See:* Ch. 255, Laws of 1969, Prefatory Note. The discovery sections were created by ch. 255, Laws of 1969, sec. 63, pp. 650–653.

[21] (1973), 57 Wis. 2d 344, 349, 204 N. W. 2d 482.

at page 102 makes clear it is the prosecutor's duty to acquire *all* relevant evidence."

Consequently, the court held:

"The test of whether evidence should be disclosed is not whether in fact the prosecutor knows of its existence but, rather, whether by the exercise of due diligence he should have discovered it."[22]

How far does this duty extend? *Wold* held that "The duty rests upon the prosecution to obtain *all* evidence in the possession of investigative agencies of the state,"[23] and the court adopted sec. 2.1 (d) of the ABA Standards:

"The prosecuting attorney's obligations under this section extend to material and information in the possession or control of members of his staff and of any others who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported to his office."[24]

There is no evidence that the FBI or the Los Angeles police department "participated in the investigation or evaluation" of this case. Therefore, the prosecutor had no duty of his own accord, in response to a general discovery motion, to seek Henderson's arrest record from these sources. To impose such a duty would create significant practical difficulties since to exercise "due diligence" the prosecutor arguably could thus be required to routinely check for possible conviction records in all 50 states.

However, it does not follow that out-of-state records are immune from discovery. Sec. 2.4 of the American Bar Association's Standards provides:

"Material held by other governmental personnel.
"Upon defense counsel's request and designation of material or information which would be discoverable if in the possession or control of the prosecuting attorney

---

[22] *Id.* at pages 349, 350.

[23] *Id.* at page 349.

[24] *Id.* note 4.

and which is in the possession or control of other governmental personnel, the prosecuting attorney shall use diligent good faith efforts to cause such material to be made available to defense counsel; and if the prosecuting attorney's efforts are unsuccessful and such material or other governmental personnel are subject to the jurisdiction of the court, the court shall issue suitable subpoenas or orders to cause such material to be made available to defense counsel."[25]

The comment to this section explains its purpose:

". . . [T]his standard is primarily concerned with material of which he does not have knowledge but of which the defense is aware; and therefore the burden is upon defense counsel to make the request and to designate the material or information which he wishes to inspect. In the area of business crimes particularly, where the defendant's activities may have been subject to regulation by agencies other than the agency investigating the criminal charge, it avoids placing the burden on the prosecutor in the first instance of canvassing all governmental agencies which might conceivably possess information relevant to the defendant. Moreover, where the existence of such information is known to the prosecutor but its quality as matter which he is obligated to disclose is not apparent to him, this standard permits a challenge by the defendant to the prosecutor's conclusion."[26]

In the instant case the substance of this standard was satisfied. At trial, defense counsel requested production of the out-of-state conviction record. The prosecutor's efforts initially failed and the court indicated it would supply defense counsel with an appropriate order to compel its production. Eventually, however, the prosecutor was able to secure the record. Finally, it must be noted that at one point during the trial when the matter of

---

[25] American Bar Association Project on *Standards Relating to Discovery and Procedure Before Trial* (Approved Draft 1970), pp. 15, 16, sec. 2.4.

[26] *Id.* at pages 83, 84.

the prosecutor's good faith in seeking the conviction record was being discussed, the trial court said:

"I am satisfied that there has been good-faith effort made and I so find on the part of the prosecution and on the part of the police department . . . ."

(b) *Time when production of criminal record required.*

Sec. 971.25 (1), Stats., does not specify the time when production of arrest records is required except to say they must be produced "upon demand." Sec. 971.23, governing discovery of a defendant's statements, prior criminal record, and list of prosecution witnesses, requires disclosure prior to trial. Sec. 971.24, governing statements of witnesses other than defendant, merely requires disclosure at the trial, before the witness testifies. It would be anomalous if the legislature had intended the criminal record of these witnesses to be disclosed before their prior statements were required to be disclosed, particularly in light of the limited purposes for which a criminal record may be used.[27] It must be noted, however, that sec. 2.2 of the ABA Standards, contrary to the applicable state discovery statutes, requires the prosecutor to perform his discovery obligations "as soon as practicable following the filing of charges against the accused."[28]

[27] Sec. 906.09, Stats.; *Scott v. State* (1974), 64 Wis. 2d 54, 60, 218 N. W. 2d 350; *Nicholas v. State* (1971), 49 Wis. 2d 683, 688, 183 N. W. 2d 11.

[28] *See also:* The commentary to sec. 2.1 (a) (vi), at pages 69, 70, requiring disclosure of a witness's prior record:

"*Prior criminal records of witnesses* (sec. 2.1 (a) (vi)). At some point during the testimony of a witness, whether on cross-examination or at the outset of direct examination, the witness's prior criminal convictions which may be admissible for purposes of impeachment will be brought to the attention of the jury. Recent developments in the law limiting the kinds of convictions which may be used for impeachment indicate the need for new procedures for determining the proper scope of cross-examination on this subject. [citation omitted] If possible, the determination should

In any event, we conclude that even if the disclosure by the prosecutor was not timely, no prejudice to the defendant resulted. Defense counsel indicated his purpose in seeking the criminal record was to impeach Sherry Henderson's credibility on cross-examination and the record was available in time to be used for this purpose. Further, while at one point defense counsel moved to exclude Henderson as a witness due to nonproduction of her criminal record, the trial court denied the motion, and defense counsel never moved for a continuance or recess. These latter remedies would have been more appropriate if defense counsel, in fact, felt his client prejudiced.[29]

Defendant additionally argues the trial court erred in failing to instruct or instructing inadequately concerning the burden of proof and presumption of innocence, a missing witness, defendant's theory of the case, and the credibility of a witness testifying under grant of immunity. Defendant also contends that the state's failure to indicate prior to trial which subsection of the party-to-a-crime statute it was relying upon was prejudicial. We have considered all of the issues raised by the defendant, and none have merit.

*By the Court.*—Judgment and order affirmed.

be made before the witness is in the box in front of the jury. [citation omitted] The prosecution loses little, if anything, by making the witness's criminal record available to defense counsel in advance of trial if there is any chance that the witness should not have revealed a particular conviction. In all other instances knowledge of a witness's criminal record merely puts defense counsel in the same position as the prosecution, which almost invariably has knowledge of the defendant's record, if any."

*See generally* concerning the differences between the ABA Standards and the Wisconsin Statutes: Note, *Criminal Discovery—Comparison of Federal Discovery and the ABA Standards With the New Statutory Provisions in Wisconsin.* 1971 Wis. L. Rev. 614.

[29] *See:* Sec. 971.23 (7), Stats.; *State v. Calhoun* (1975), 67 Wis. 2d 204, 217, 218, 226 N. W. 2d 504; *Wold v. State* (1973), 57 Wis. 2d 344, 351, 204 N. W. 2d 482; *Irby v. State* (1973), 60 Wis. 2d 311, 210 N. W. 2d 755.

WILKIE, C. J. *(dissenting in part)*. My disagreement with the majority opinion is limited to the handling of the *Miranda* warning. I would hold that the warning, as given by the officer here, was inadequate. I, therefore, would reverse and remand for a new trial on the basis of all of the evidence exclusive of the confession given by the defendant.

It is crucial that the warning given indicate clearly to the defendant that he has a right to a court-appointed attorney before and during his interrogation. The warning given here was entirely too fuzzy and did not adequately convey this essential message.

A case holding such a warning improper is the Seventh Federal Circuit Court of Appeals decision of *United States ex rel. Williams v. Twomey*.[1] The defendant was told he had the right to consult an attorney prior to questioning, but was also informed that he had a right to court-appointed counsel "if and when you go to court."[2] In reversing defendant's conviction, the court said:

"We hold that the warning given here was not an 'effective and express explanation;' to the contrary, it was equivocal and ambiguous. In one breath appellant was informed that he had the right to appointed counsel during questioning. In the next breath, he was told that counsel could not be provided until later. In other words, the statement that no lawyer can be provided at the moment and can only be obtained if and when the accused reaches court substantially restricts the absolute right to counsel previously stated; it conveys the contradictory alternative message that an indigent is first entitled to counsel upon an appearance in court at some unknown, future time. The entire warning is therefore, at best, misleading and confusing and, at worst, constitutes a subtle temptation to the unsophisticated, indigent accused to forego the right to counsel at this critical moment.

"The practice of police interrogation of an accused, after informing him that counsel cannot be provided at

---

[1] (7th Cir. 1972), 467 Fed. 2d 1248.

[2] *Id.* at pages 1249, 1250, note 1.

the present time, is a practice anticipated and expressly prohibited by the *Miranda* decision.

" '. . . if police propose to interrogate a person they must make known to him that he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him prior to any interrogation. If authorities conclude that they will not provide counsel during a reasonable period of time in which investigation in the field is carried out, they may refrain from doing so without violating the person's Fifth Amendment privilege so long as they do not question him during that time.' *Miranda*, 384 U. S. 436 at 474, 86 S. Ct. 1602 at 1628, 16 L. Ed. 2d 694 at 724.

"Consistent with the above, many courts encountering similarly qualified warnings have recognized them as deficient. See United States v. Garcia, 431 F. 2d 134 (9 Cir. 1970) ; Lathers v. United States, 396 F. 2d 524 (5 Cir. 1968) ; Sullins v. United States, 389 F. 2d 985 (10 Cir. 1968) ; Fendley v. United States, 384 F. 2d 923 (5 Cir. 1967) ; Square v. State, 283 Ala. 548, 219 So. 2d 377 (1969) ; Reese v. State, 462 P. 2d 331 (Okl. Cr. 1969) ; State v. Creach, 77 Wash. 2d 194, 461 P. 2d 329 (Wash. 1969)."[3]

The court's rationale is equally applicable to the case at bar.

If the *Miranda* warning is to adequately apprise the defendant of his rights, it must be clear, and inform the defendant beyond any doubt of his constitutional right to court-appointed counsel prior to interrogation. The warning here falls short of what is required by *Miranda*, and Jones should now be retried on the basis of all of the evidence except the confession gained after the inadequate warning was given.

I am authorized to state that Mr. Justice DAY joins in this dissent.

---

[3] *Id.* at pages 1250, 1251. *See also: Wright v. North Carolina* (1974), 415 U. S. 936, 94 Sup. Ct. 1452, 39 L. Ed. 2d 494, notes 1 and 3.