STATE of Wisconsin, Plaintiff-Respondent,

v.

David A. SCHINDLER, Defendant-Appellant.†

Court of Appeals

No. 87–2285–CR. Submitted on briefs June 24, 1988.—Decided July 28, 1988.

(Also reported in 429 N.W.2d 110.)

For the defendant-appellant the cause was submitted on briefs of *Walter H. Isaacson* and *Hart, Sanborn & Isaacson,* of Janesville.

For the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney

† Petition to review denied.

general, and *Jerome S. Schmidt,* assistant attorney general, of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J.   David Schindler appeals from a judgment of conviction of second-degree murder. The issues are whether Schindler voluntarily, knowingly and intelligently waived his right to remain silent and his right to counsel, and whether the trial court erred by permitting the state to introduce evidence of other crimes. We find no error and affirm.

Donna Patrick and David Schindler were the parents of Marie Schindler, born August 5, 1986. Marie died November 14, 1986 of a skull fracture. An autopsy revealed broken ribs, shin fractures, and bruises on her elbow, head and chest. She also had burn marks on her buttocks, a broken knee, and a ruptured stomach.

After Marie's death, police interrogated Schindler and gave him "Miranda" warnings once the interrogation became in-custody.[1] During the interrogations, Schindler made arguably incriminating statements. Prior to trial, Schindler moved to suppress the statements. The trial court denied Schindler's motion, and admitted the statements at trial. Schindler was convicted of second-degree murder and he appeals.

### KNOWING AND VOLUNTARY WAIVER

Schindler contends that his decision to give a statement was not voluntary, knowing, and intelli-

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 471 (1966), held that before an in-custody suspect could be questioned, he must be told, among other things, that he or she may remain silent, and may consult with an attorney.

48

gent, three requirements for a valid waiver of rights to silence and counsel mandated by *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). He bases this contention on his low I.Q., (a few points above mild retardation), his emotional condition (crying, fear of mental breakdown, lack of memory, wishing he were dead), and an allegedly confusing version of "Miranda" rights read to him ("If you cannot afford a lawyer, the public defender's office will determine whether one will be appointed for you"). In his brief, Schindler concedes: "In the case at bar, there is no evidence of improper coercion on the part of the police."

In *Colorado v. Connelly,* 479 U.S. —, 93 L. Ed. 2d 473 (1986), the court considered a confession volunteered by a person suffering from "command hallucinations."

> The sole concern of the Fifth Amendment, on which Miranda was based, is governmental coercion. Indeed, the Fifth Amendment privilege is not concerned "with moral and psychological pressures to confess emanating from sources other than official coercion." The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on "free choice" in any broader sense of the word. (Citations omitted.)
>
> ....
>
> Miranda protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that.

*Id.* at 486–87.

Schindler's concession of no improper police coercion ends our inquiry into the effect of his low I.Q. and his emotional condition. Whether Schindler was in-

formed of his right to counsel is a different question. *Connelly* did not overrule *Miranda*'s requirement that prior to any questioning, the person in custody must be warned "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda,* 384 U.S. at 444.

In *Jones v. State,* 69 Wis. 2d 337, 230 N.W.2d 677 (1975) and *Grennier v. State,* 70 Wis. 2d 204, 234 N.W.2d 316 (1975), the court examined "Miranda warnings" which varied from the language found in *Miranda.*

In *Jones,* the interrogating officer testified to the warning he gave defendant:

> At the time [defendant] appeared in court, he was also entitled to have an attorney. If he didn't have one, and he wanted one and didn't have any funds for one, the Courts would appoint him one. I also told him that he could have his interrogation terminated any time that he so desired, and I repeated that he had the right to remain silent if he wanted to.

*Jones,* 69 Wis. 2d at 342–43, 230 N.W.2d at 681.

In *Grennier,* defendant was warned:

> You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and have him present with you during questioning. We have no way of giving you a lawyer if you cannot afford one, but one may be appointed for you, if you wish, if and when you go to court. If you wish to answer questions now

without a lawyer present, you have the right to stop answering questions at any time.

*Grennier,* 70 Wis. 2d at 213, 234 N.W.2d at 321.

The warnings used in *Jones* and *Grennier* were found constitutionally sufficient. The courts concluded that the failure to warn of the right to have counsel appointed immediately was harmless because of the warning that defendants had the right to remain silent. *Jones,* 69 Wis. 2d at 345, 230 N.W.2d at 682–83; *Grennier,* 70 Wis. 2d at 214–15, 234 N.W.2d at 322. The warnings given to Schindler were similar to the warnings given in *Jones* and *Grennier,* and the failure to warn Schindler of his right to have counsel appointed immediately was rendered harmless by the additional warnings given.

## OTHER CRIMES EVIDENCE

Defendant argues that the trial court erred by permitting the state to introduce evidence of the victim's leg and rib fractures, both of which he concedes were caused by intentional child abuse. He correctly cites the two-step test regarding the admissibility of other crimes evidence noted in *State v. Danforth,* 129 Wis. 2d 187, 202, 385 N.W.2d 125, 131 (1986):[2]

> Trial courts must apply a two-step test to determine whether other wrongs evidence is admissible. First, the trial court must fit the evidence

---

[2]In his reply brief, defendant argues for the first time that the trial court failed to apply the *Danforth* two-step test. We do not generally review issues raised for the first time in a reply brief. *State v. Lewandowski,* 122 Wis. 2d 759, 763, 364 N.W.2d 550, 552 (Ct. App. 1985). We see no reason to do so here.

within one of the sec. 904.04(2), Stats., exceptions. Then it must determine whether any prejudice resulting from the admission of such evidence substantially outweighs its probative value. (Citations and footnote omitted.)

Section 904.04(2), Stats., provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The crux of defendant's argument is his statement: "Implicit in the analysis of prior acts evidence is the requirement that it was the defendant who committed the prior acts." We agree with this statement, but the question then becomes: who determines whether defendant committed the prior acts, and how is the determination made? We disagree with defendant's assertion that the trial court should have heard the evidence, concluded that the state failed to show that defendant caused the victim's leg and rib fractures by clear and convincing evidence, and prohibited the state from submitting this evidence to the jury. Instead, we adopt a test recently used by the United States Supreme Court.

In *Huddleston v. United States,* 485 U.S. —, 99 L. Ed. 2d 771 (1988), defendant was convicted of possessing stolen video tapes in interstate commerce. The government sought to prove that defendant knew the tapes were stolen by evidence of "similar acts." The similar acts were offers to sell several thousand new

12″ black and white television sets for $28 each, and an offer to sell 70 Amana large appliances for $8,000. The appliances were valued at $20,000 and had been stolen. *Id.* at 778.

Federal Rule of Evidence 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Section 904.04(2), Stats., is identical in meaning to Federal Rule of Evidence 404(b). Section 901.04(2), Stats., is identical in meaning to Federal Rule of Evidence 104(b), which provides:

> When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

In *Huddleston,* the Supreme Court said:

> Petitioner's reading of Rule 404(b) as mandating a preliminary finding by the trial court that the act in question occurred not only superimposes a level of judicial oversight that is nowhere apparent from the language of that provision, but it is simply inconsistent with the legislative history behind Rule 404(b).
>
> . . . .
>
> In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a

> finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact—here, that the televisions were stolen—by a preponderance of the evidence.

*Huddleston,* 99 L.Ed.2d at 781–83. The court concluded that the direct and indirect evidence of the other crimes evidence was sufficient to permit the jury to reasonably find that the televisions were stolen. *Id.* at 783. It therefore affirmed the trial court's ruling permitting the other crimes evidence to go to the jury.

The *Huddleston* court examined the legislative history behind Rule 404(b), and determined that Congress "was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence." *Id.* at 782.

Uniformity with the proposed Federal Rules of Evidence was the overriding principle when the Wisconsin Evidence Code was drafted. Decker, *A New Wisconsin Evidence Code?,* 56 Marq. L. Rev. intro. (1973). We can provide that uniformity by interpreting the Wisconsin Code of Evidence as the federal courts have interpreted like sections of the Federal Rules of Evidence. Therefore we adopt the *Huddleston* analysis for secs. 904.04(2) and 901.04(2).

Whether a jury could reasonably find that defendant caused the victim's leg and rib fractures is a question of law. *See State v. Gomaz,* 141 Wis. 2d 302, 307–09, 414 N.W.2d 626, 629–30 (1987) (whether lesser included offense instruction must be given is issue of law; test is whether jury could reasonably find defendant guilty of lower degree and not guilty of higher degree). We therefore address this question *de novo.*

*Katze v. Randolph & Scott Mut. Fire Ins.,* 111 Wis. 2d 326, 330, 330 N.W.2d 232, 234 (Ct. App. 1983), *rev'd on other grounds,* 116 Wis. 2d 206, 341 N.W.2d 689 (1984).

A radiologist testified that the victim's leg injuries were caused by violently shaking the victim up and down with a great deal of strength, and the broken ribs were caused by direct fist blows to the back, with the fractures appearing along the outline of an adult hand. In the radiologist's opinion, the fractured ribs were inconsistent with injuries caused by a person trying to catch a child falling from a person's lap, or being tossed in the air five or six inches and caught.

Defendant's explanation for the victim's rib injuries was that he had grabbed the victim to prevent a fall to the floor. His explanation for the victim's leg injuries was that he had once picked up the victim by the feet.

The jury heard police officers explain defendant's versions of how the victim's injuries occurred, and a description of his distress when discussing his involvement in the victim's injuries. Though defendant argues that Donna Patrick had equal access to the child, the jury heard Patrick deny that she struck, hit, dropped or threw the victim. Patrick testified that either she or defendant were with the victim during most of the victim's life. Patrick also testified that defendant told her that he was frustrated with the victim.

This evidence is sufficient to permit a reasonable jury to find, by a preponderance of the evidence, that defendant caused the victim's leg and rib injuries. The *Huddleston* test is met, and we therefore conclude

that the trial court correctly permitted the jury to hear that evidence.

*By the Court.*—Judgment affirmed.