COURT OF APPEALS
DECISION
DATED AND FILED

February 17, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP2064-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF860

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

JOSEPH GONZALES,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Brown County: THOMAS J. WALSH, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Joseph Gonzales appeals a judgment of conviction, entered upon a jury's verdict, convicting him of attempted second-degree sexual

assault, contrary to WIS. STAT. § 940.225(2)(d) (2017-18),[1] and of possessing drug paraphernalia, contrary to WIS. STAT. § 961.573(1). He also appeals an order denying his postconviction motion for a new trial. Gonzales argues the State violated its statutory discovery obligations by failing to disclose before trial that the alleged victim, Maria,[2] had been previously convicted of fraud in California. Gonzales also contends that his trial counsel was ineffective by failing to discover Maria's conviction and by failing to object to—and by actually eliciting—Maria's testimony that Gonzales was taking pills on the night of the incident. Gonzales alternatively claims that the cumulative effect of these claimed errors entitles him to a new trial in the interest of justice. We reject Gonzales' arguments and, accordingly, affirm the judgment and order.

## BACKGROUND

¶2     The following facts are taken from the evidence at Gonzales' jury trial. Gonzales was living in an apartment with his girlfriend, Alicia, along with Alicia's adult daughter, Maria, and Maria's three children. In June of 2017, Maria awoke in her bedroom at around 2:00 a.m. to find that her shorts and underwear were pulled down around her knees. Maria also found Gonzales on his knees, facing her. When Maria asked Gonzales what he was doing, he said he was looking for a pacifier for one of Maria's sons, whom he said was crying. Maria realized that her baby was not on the bed on which she had fallen asleep, so she

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] In accordance with the policy underlying WIS. STAT. RULE 809.86(4), we refer to the victim by a pseudonym.

got up and walked to Gonzales' room—where she found the baby—and grabbed him.

¶3     Maria felt scared and violated, and she went back into her room, "put [her] son down, and … hid in [her] closet." While she was in the closet, she called her brother and told him what had happened, and he told her to call the police. DNA was collected from Maria during a subsequent sexual assault examination. The examination, upon testing, revealed DNA from multiple males but with no positive match to Gonzales. The examination also yielded no signs of injury or penetration.

¶4     The State charged Gonzales with attempted second-degree sexual assault, in violation of WIS. STAT. § 940.225(2)(d); and with possession of drug paraphernalia, in violation of WIS. STAT. § 961.573(1). The latter charge was in relation to marijuana pipes that law enforcement found in Gonzales' room while questioning him. Given the facts that there was neither DNA evidence nor other witnesses tying Gonzales to a sexual assault of Maria, the State's case primarily relied on the statements Maria made and the testimony of the responding officers, who restated what they had been told by Maria and Gonzales.

¶5     Gonzales had disclosed to the responding officers that he went into Maria's room to look for a pacifier because the baby in his room was crying. Initially, Gonzales denied being on his knees in the bedroom, but later admitted that he was on his knees looking for a pacifier. Gonzales further denied Maria's accusations and the possibility that there would be DNA evidence on Maria's clothes or person. The officers also asked Gonzales about the pipes they found and if they were used for smoking marijuana, and Gonzales replied affirmatively.

¶6      The jury found Gonzales guilty of both charges, and the circuit court sentenced him to seven years' initial confinement followed by seven years' extended supervision.  Gonzales filed a motion for postconviction relief.  He argued that his trial counsel provided ineffective assistance because counsel: (1) failed to impeach Maria with her prior California forgery conviction; and (2) failed to object to, and actually elicited, Maria's testimony that Gonzales took pills on the night of the assault.

¶7      As to the impeachment claim, Gonzales asserted that Maria was convicted[3] in California in 2014 of misdemeanor forgery for passing a fraudulent check.  To support that claim, Gonzales attached a "minute order" from a court in Fresno County, California.  He later provided the circuit court with the criminal complaint that authorities from Fresno County had filed wherein the case number matched that of the minute order.  Gonzales argued the two documents collectively showed that in 2014, the Fresno County court accepted Maria's no-contest plea to misdemeanor forgery, deferred judgment, and placed her on three years' conditional probation.

¶8      The State filed a response to Gonzales' motion, questioning Maria's prior California criminal conviction stating that it was unaware of that conviction until Gonzales filed his motion.  It also said that Maria's criminal conviction was not listed on the National Crime Information Center (NCIC)[4] report which it had

---

[3] There are questions about whether there was ever a conviction on the plea in California, but Gonzales refers to it as a conviction.  We will use "criminal history" where appropriate.

[4] "NCIC is a computerized index of criminal justice information …. It is available to [f]ederal, state, and local law enforcement and other criminal justice agencies." https://fas.org/irp/agency/doj/fbi/is/ncic.htm (last viewed Feb. 3, 2021).

conducted prior to trial. Nevertheless, Gonzales filed a supplemental postconviction motion alleging that the State had violated its statutory discovery obligations by not searching further for Maria's criminal conviction and by not alerting Gonzales about that prior history before trial.

¶9   The circuit court held a ***Machner***[5] hearing at which Gonzales' trial counsel, George Pappas, testified. Pappas stated the prosecutor told him that Maria had a "deferred judgment out of California," and that Pappas and the State entered into "an informal agreement" not to use the deferred judgment to impeach Maria. Gonzales alleged that if his attorney was aware of the deferred judgment prior to trial, then he provided ineffective assistance by reaching an "informal agreement" with the State by not using the case to impeach Maria.

¶10   As to the evidence regarding Gonzales ingesting pills on the night of the assault, Gonzales testified at the ***Machner*** hearing that he told his lawyer the pills were for a skin condition. Gonzales also denied that he and his trial counsel agreed that part of his defense was that the apartment was a "carefree environment" between Gonzales and Maria by showing that "drugs and alcohol were involved." Pappas testified that the pill evidence could be used to Gonzales' advantage in supporting the theory that this was "a consensual act, that these two, Mr. Gonzales and this woman, were engaged in sexual behavior, sexual acts on this particular night." Pappas stated "Gonzales was satisfied and okay with proceeding on the theory that it was somewhat of a carefree environment." When Gonzales objected to the trial strategy, Pappas was "shocked" because he thought

---

[5] *See* ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

5

there was an "understanding together that this was how we were going to proceed with the trial."

¶11 After the ***Machner*** hearing, the circuit court issued an oral ruling. The court first found that the State had not uncovered any criminal conviction for Maria before trial. The court concluded that the State made reasonable efforts to uncover Maria's prior criminal history, and that Pappas was not deficient for relying upon the State's representations based upon the NCIC search. Further, the court questioned whether Maria's prior California prosecution resulted in a conviction, based upon the minute order and criminal complaint, which showed the California court's deferred judgment. As such, the court questioned whether that was, in fact, a conviction that could be used to impeach Maria under WIS. STAT. § 906.09(3). The court further concluded that even if evidence of Maria's prior criminal history had been provided to the jury, it would not have made a difference in the outcome of the trial.

¶12 As to the pill consumption evidence, the circuit court stated it was not convinced that Pappas' strategy was inappropriate or deficient. Finally, the court also concluded that a new trial was not warranted in the interest of justice. The court therefore denied Gonzales' postconviction motion for a new trial, and this appeal follows.

## DISCUSSION

*I. Discovery Violation*

¶13 Wisconsin's discovery statute for criminal proceedings requires the State to disclose to the defense, within a reasonable time before trial, certain materials and information that are within the possession, custody or control of the

6

State. WIS. STAT. § 971.23(1). The statute further provides that "[u]pon demand, the district attorney shall, within a reasonable time before trial, disclose to the defendant or his or her attorney … [t]he criminal record of a prosecution witness *which is known* to the district attorney." Sec. 971.23(1)(f) (emphasis added). The State's duty is not limited to disclosing only a criminal record that it actually knows about before trial. Rather, the "test of whether evidence should be disclosed is not whether in fact the prosecutor knows of its existence but, rather, whether by the exercise of due diligence he [or she] should have discovered it." *Jones v. State*, 69 Wis. 2d 337, 349, 230 N.W.2d 677 (1975) (citation omitted). The State may not avoid this duty by asserting that it "did not know of those things within the ambit of § 971.23 that could have been reasonably discovered." *State v. White*, 2004 WI App 78, ¶23, 271 Wis. 2d 742, 680 N.W.2d 362.

¶14     Whether the State complied with the discovery statute is a question of law, which we review de novo. *See State v. DeLao*, 2002 WI 49, ¶14, 252 Wis. 2d 289, 643 N.W.2d 480. If we conclude that the State violated the statute without good cause, we then decide whether the violation was harmless. *See State v. Rice*, 2008 WI App 10, ¶19, 307 Wis. 2d 335, 743 N.W.2d 517 (2007). An error is harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error. *State v. Harvey*, 2002 WI 93, ¶49, 254 Wis. 2d 422, 647 N.W.2d 189. Harmless error is a question of law that we review de novo. *State v. Nelson*, 2014 WI 70, ¶18, 355 Wis. 2d 722, 849 N.W.2d 317.

¶15     Gonzales makes three arguments related to his claim that the State violated the discovery statute. Gonzales' first argument is based solely upon his supplemental postconviction motion, in which he claimed that the State told his trial attorney prior to trial that Maria self-reported that she had committed a crime.

In his motion, however, Gonzales presented no evidence to support that assertion. The circuit court held an evidentiary hearing on Gonzales' motion. Maria, however, was not called to testify at that hearing, and the alleged pretrial self-reporting was not otherwise mentioned at the hearing. On appeal, Gonzales only contends that the State did not deny the self-reporting assertion made in his postconviction submissions, but he does not contest his failure to raise the issue or provide evidence concerning it at the hearing. Without any facts of record to support his claim of Maria's self-report of her prior criminal history, the argument necessarily fails. *See State v. Allen*, 2004 WI 106, ¶15, 274 Wis. 2d 568, 682 N.W.2d 433 (stating that a postconviction motion cannot be maintained on the basis of conclusory allegations).

¶16 Second, Gonzales argues that the State had specific knowledge about Maria's forgery case because his trial counsel testified that the State told him about the criminal history before trial. This claim fails, however, because it necessarily would be self-contradictory and self-defeating. That is to say, the State could not have failed to disclose Maria's prior criminal history if it actually informed Gonzales' trial counsel of it. Additionally, the claim fails because the circuit court made a factual finding that the State did not know about the criminal history prior to trial. This finding is not clearly erroneous, *see* WIS. STAT. § 805.17(2), and Gonzales makes no argument that this finding is clearly erroneous.

¶17 Third, Gonzales argues that the State's failure to satisfactorily research Maria's criminal background and provide evidence of the criminal record is proven by the ease with which his investigator found her criminal history after the trial. How easily Gonzales' investigator located the prior criminal history, however, is not the test to determine whether the State violated its discovery

obligation to search with due diligence. The State did search the FBI database, and we agree with the circuit court that reliance on that search was reasonable. The State explained that it had no specific knowledge regarding Maria's California criminal history, even after searching the NCIC, which explanation the circuit court found credible. The State is not required to research a witness's criminal history from other jurisdictions absent specific knowledge that the witness had an out-of-state conviction or a specific request from defense counsel that the prosecutor do so. *See Jones*, 69 Wis. 2d at 349-51. Gonzales does not cite any evidence in the appellate record that he or his attorney made any specific request before trial that the State conduct any out-of-state record search beyond NCIC. We therefore affirm the court's conclusion that the State complied with its discovery obligations, and we need not address the State's alternative argument of harmless error.

## II. *Ineffective Assistance of Counsel*

¶18 Gonzales next argues that his trial counsel was ineffective by failing to impeach Maria's credibility with her prior California criminal history and by not objecting to—but rather actually eliciting—Maria's testimony that Gonzales used pills on the night of the attempted assault. This court's review of an ineffective assistance of counsel claim presents a mixed question of fact and law. *State v. Erickson*, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). The circuit court's findings of fact will not be disturbed unless they are clearly erroneous. *Id.* However, the ultimate determination of whether the attorney's performance fell below the constitutional minimum is a question of law that we review independently. *Id.*

¶19    In order to substantiate a claim of ineffective assistance of counsel, a defendant must show both that his or her counsel's performance was deficient and that counsel's errors were prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We need not address both components if a defendant fails to make a sufficient showing on one. *See id.* at 697.

¶20    Deficient performance requires a defendant to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. *Id.* at 687. In order to prove prejudice, a defendant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. However, a defendant need not prove the outcome would more likely than not be different in order to establish prejudice in ineffective assistance cases. *State v. Sholar*, 2018 WI 53, ¶44, 381 Wis. 2d 560, 912 N.W.2d 89. Thus, "a defendant need not prove the jury would have acquitted him [or her], but he [or she] must prove there is a reasonable probability it would have, absent the error." *Id.*, ¶46.

*A. Maria's Prior Criminal History*

¶21    Gonzales' postconviction motion alleged his trial counsel was ineffective by failing to independently research Maria's prior criminal history and failing to use the resulting evidence of her prior California forgery to impeach Maria's credibility at trial. Gonzales further asserts that his counsel performed

10

deficiently by reaching an agreement with the State not to use her prior criminal history to impeach Maria.

¶22 Gonzales' trial counsel testified at the ***Machner*** hearing that he did not independently investigate Maria's criminal background, but instead he relied upon the district attorney's representation that Maria had a deferred judgment in California. In light of that information, counsel testified that he and the prosecutor had an "informal agreement" that he would not use Maria's prior criminal record to impeach her. Meanwhile, Gonzales' counsel denied having any recollection of Gonzales independently disclosing to him that Maria had a criminal history.

¶23 As noted above, the circuit court found that the State had not uncovered any criminal history for Maria before the trial; it also found that trial counsel relied on the State's representation that it found no criminal conviction for Maria. The court further found that trial counsel relied on the State's representation to that effect, and that reliance did not constitute deficient performance because the State's search efforts were reasonable. Further, the court found the California "minute order" record provided by Gonzales confusing. The court stated it was not satisfied Maria had been convicted of a crime because the order said Maria's judgment and sentence were both suspended. Gonzales would not have been able to impeach Maria with the California information, because she had not been convicted of a crime within the meaning of Wisconsin's statutes. *See* WIS. STAT. § 906.09(3).

¶24 Even assuming the California judgment was admissible as impeachment evidence, and that counsel's failure to impeach Maria with it was deficient performance, Gonzales fails to establish that this failure was prejudicial. Maria testified to the details regarding the night of the attempted sexual assault.

11

Assuming Maria would have been truthful if asked about her "criminal" history—and Gonzales offered no reason to believe she would not have been—the jury would have, at most, heard that she was convicted of a single crime. *See State v. Rutchik*, 116 Wis. 2d 61, 76, 341 N.W.2d 639 (1984) ("The examiner may ask the witness if he [or she] has ever been convicted of a crime and if so how many times. No further inquiry into the nature and circumstances of the crimes is permitted."). Thus, the jury would not have heard that Maria was convicted of a crime of dishonesty, despite Gonzales' suggestion to the contrary. *See State v. Lobermeier*, 2012 WI App 77, ¶16, 343 Wis. 2d 456, 821 N.W.2d 400 (stating that in Wisconsin, the jury "does not know what the crimes were—just how many, unless either the witness does not follow the script and give the number approved by the trial court … or identifying the crimes is necessary to rehabilitate that witness"). Given Maria's detailed testimony and the lack of any indication that the jury would not have learned the nature of Maria's crime, Gonzales has not demonstrated a reasonable probability the verdict would have been different had his trial counsel impeached Maria's credibility with her prior criminal history.

¶25 In addressing the issue of prejudice in his reply brief, Gonzales merely makes a cursory argument that Maria's testimony was "fairly implausible." Gonzales claims that, given Maria's testimony about the circumstances of the assault, no one would be able to "move Maria, remove her pants, and attempt to sexually assault her." The jury, however, found otherwise, and there is no reason to believe the jury would have questioned Maria's account if they knew she had one prior conviction. In other words, there is no reason to believe the evidence from Maria's California criminal case would have "tipped the scales," as Gonzales contends.

## B. Pill Testimony

¶26 Gonzales next claims that his attorney performed deficiently by failing to object to Maria's testimony that she observed Gonzales taking "some kind of pills" on the night of the assault. He claims this information impugned his credibility because implicit in Maria's testimony was the inference that he was taking an illegal substance. Gonzales further contends counsel was deficient by failing to object to, and actually eliciting the pill consumption statement, because the information was inadmissible as "other acts" evidence under *State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998). Additionally, Gonzales contends he did not agree to his counsel's strategy to paint a picture of a "carefree environment" in which Maria and Gonzales were taking pills and drinking alcohol together. In all, he asserts that the pill testimony caused the jury to question Gonzales' character and credibility, thus prejudicing him.

¶27 The circuit court found that, although counsel's strategy may not have been a "winning strategy," it was not convinced that it was "inappropriate." The court concluded that Gonzales had not established that counsel's performance was "an ineffective demonstration of legal skills." On appeal, Gonzales argues that the strategy made little sense in light of the testimony Maria provided.

¶28 Assuming without deciding that counsel was deficient by eliciting the pill-consumption testimony, Gonzales has not shown how his counsel's strategy prejudiced him. Gonzales contends Maria's testimony regarding Gonzales taking pills made Gonzales seemed unpredictable and dangerous to the jury. This claim, however, is based on speculation. Gonzales cannot establish prejudice on speculation alone. *See State v. Leighton*, 2000 WI App 156, ¶38, 237 Wis. 2d 709, 616 N.W.2d 126.

13

¶29     In addition, Gonzales has not shown any probability that the circuit court would have excluded the pill-consumption evidence even if his attorney had lodged an objection.  This evidence was not that of "other acts," as Gonzales contends.   Instead, it was direct, contextual evidence related to Maria's explanation of what happened before the attempted assault, and her state of mind after it.  Maria testified that she was fearful of Gonzales as she saw him take some kind of pills, and did not know how they might affect him and how he would act.  *See State v. Dukes*, 2007 WI App 175, ¶28, 303 Wis. 2d 208, 736 N.W.2d 515 ("Evidence is not 'other acts' evidence if it is part of the panorama of evidence needed to completely describe the crime that occurred and is thereby inextricably intertwined with the crime.").

¶30     Finally, even if Gonzales successfully moved to exclude the pill testimony, he has failed to show that there is a reasonable probability that the jury would have returned a different verdict.  The testimony at issue was very minimal, and did not insinuate the use of illegal drugs.  The jury would still have heard evidence about Maria's fearful demeanor through her own testimony and the testimony of law enforcement and the sexual assault examining nurse.  Gonzales fails to show any deficient performance on his attorney's part in failing to object to the pill testimony was prejudicial.

*III.  Interest of Justice*

¶31     Under WIS. STAT. § 752.35, we may grant a new trial in the interest of justice when it appears that either: (1) the real controversy has not been fully tried; or (2) it is probable that justice has for any reason miscarried.  Gonzales contends that the controversy has not been fully tried, based on the cumulative effect of the alleged errors discussed above.  However, we have already rejected

14

each of Gonzales' challenges, and "[a]dding them together adds nothing.  Zero plus zero equals zero."  *See **Mentek v. State***, 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976).  Accordingly, we decline to grant Gonzales a new trial.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.